**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

JOHN A. PATTERSON              )
721 North Quidnessett Road     )
North Kingstown, RI   02852     )
                                     )
JOHN BOYT                    )
210 Whalers Walk              )
San Pedro, CA 90731          )
                                     )     5:17-cv-00467
JANIS FORT                   )
29272 Providence Way        )
Hayward, CA  94544           )
                                     )
RUBY ALSBURY              )
4400 Bluemel Road, #514      )
San Antonio, TX 78240        )
                                     )
RAYMOND BRUNTMYER     )
250 East Debbie Lane          )
Apt 5210                       )
Mansfield, TX 76063          )
                                     )
JUDY HENSLEY               )
8452 Mt Vernon               )
Lemon Grove, CA 91945     )
                                     )
DOUGLAS KELDER           )
N1037 Glendenning Road      )
Shell Lake, WI 54871          )
                                     )
             Plaintiffs,       )
v.                               )
                                     )
DEFENSE POW/MIA ACCOUNTING  )
AGENCY; FERN SUMPTER WINBUSH,  )
in her official capacity as Interim Agency  )
Director of DPAA; DEPARTMENT OF  )
DEFENSE; JAMES MATTIS, in his official )
capacity as Secretary of Defense; AMERICAN )
BATTLE MONUMENTS COMMISSION;  )
ROBERT DALESSANDRO, in his official  )
capacity as Acting Secretary.       )
                                     )

1

)

Defendants                              )

_____)

## PETITION FOR WRIT OF MANDAMUS
## AND DECLARATORY RELIEF

### INTRODUCTION

This action is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and

Mandamus Act, 28 U.S.C. § 1361 and 28 U.S.C. § 1651 in response to the ongoing inaction of the

Defense POW/MIA Accounting Agency ("DPAA") and its predecessor the Joint POW/MIA

Accounting Command ("JPAC") in correctly accounting for deceased WWII era Army service

members whose remains were not identified by the U.S. Government and were buried as

Unknowns. At the close of World War II, the U.S. Army Graves Registration Service identified

some, but not all, of the remains recovered from various temporary cemeteries in the Philippine

Islands.  Ultimately, these unidentified remains were interred in the Fort McKinley Military

Cemetery near Manila as Unknowns.  All records pertaining to these remains were classified and

restricted from public access until recently.

Through related litigation in this Court and other research, some of the classified records

have become available to family members who wish to see the remains of their loved ones

identified.  Defendants have arbitrarily, capriciously and repeatedly refused to consider this new

evidence or conduct newer, more reliable, inexpensive and readily available DNA sequencing tests

to identify the remains.  This violates the DPAA's ministerial duty to locate, recover and identify

the remains of missing persons under 10 U.S.C. § 1501 *et seq*. Defendants have abused the

procedures outlined in 10 U.S.C. § 1501 *et seq.,* to include failing to provide family members of

missing persons appropriate information related to their fallen relatives, and have systematically

2

denied Plaintiffs' right to substantive due process.  Accordingly, Plaintiffs seek an order from this Court compelling the DPAA to carry out its duties as mandated by statute and to declare the rights of the Plaintiffs to the identification and repatriation of the remains of their loved ones.

**I.**

**<u>PARTIES</u>**

1.      Hon. John A. Patterson, nephew of Alexander R. Nininger, is the person designated by the Department of Defense to direct disposition of the remains of Alexander R. Nininger. Plaintiff, as the designated Primary Next of Kin (PNOK) of Nininger, continues to suffer a legal wrong due to ongoing DPAA inaction and failure to carry out its ministerial duties, for which there is no adequate legal remedy.  Furthermore, ongoing DPAA inaction has substantially deprived Plaintiff of his rights to due process under the United States Constitution. Plaintiff is thus a proper party under the respective statutes and the United States Constitution.

2.      John Boyt, grandson of Loren P. Stewart, is the person designated by the Department of Defense to direct disposition of the remains of Loren P. Stewart.  Plaintiff, as the designated Primary Next of Kin (PNOK) of Stewart, continues to suffer a legal wrong due to ongoing DPAA inaction and failure to carry out its ministerial duties, for which there is no adequate legal remedy. Furthermore, ongoing DPAA inaction has substantially deprived Plaintiff of his rights to due process under the United States Constitution. Plaintiff is thus a proper party under the respective statutes and the United States Constitution.

3.      Janis Fort, granddaughter of Guy O. Fort, is the person designated by the Department of Defense to direct disposition of the remains of Guy O. Fort.  Plaintiff, as the designated Primary Next of Kin (PNOK) of Fort, continues to suffer a legal wrong due to ongoing DPAA inaction and failure to carry out its ministerial duties, for which there is no adequate legal remedy.  Furthermore, ongoing DPAA inaction has substantially deprived Plaintiff of her rights to

3

due process under the United States Constitution. Plaintiff is thus a proper party under the respective statutes and the United States Constitution.

4.      Mrs. Ruby Marie Alsbury, sister of Robert R. Morgan, is the person designated by the Department of Defense to direct disposition of the remains of Robert R. Morgan.  Due to medical disability, Mrs. Alsbury has granted General Power of Attorney to her son, David Alsbury, for all purposes including the disposition of the remains of Robert R. Morgan, as provided for by 10 U.S.C. § 1501(d).  Plaintiff, as the designated Primary Next of Kin (PNOK) of Morgan, continues to suffer a legal wrong due to ongoing DPAA inaction and failure to carry out its ministerial duties, for which there is no adequate legal remedy.  Furthermore, ongoing DPAA inaction has substantially deprived Plaintiff of her rights to due process under the United States Constitution. Plaintiff is thus a proper party under the respective statutes and the United States Constitution.

5.      Raymond Bruntmyer, brother of Lloyd Bruntmyer, is the person designated by the Department of Defense to direct disposition of the remains of Lloyd Bruntmyer.  Plaintiff, as the designated Primary Next of Kin (PNOK) of Bruntmyer, continues to suffer a legal wrong due to ongoing DPAA inaction and failure to carry out its ministerial duties, for which there is no adequate legal remedy.  Furthermore, ongoing DPAA inaction has substantially deprived Plaintiff of his rights to due process under the United States Constitution. Plaintiff is thus a proper party under the respective statutes and the United States Constitution.

6.      Judy Hensley, niece of David Hansen, is the person designated by the Department of Defense to direct disposition of the remains of David Hansen.  Due to disability, Judy Hensley has designated her Daughter, Jennifer Russell, as her Attorney in Fact for all purposes regarding the disposition of the remains of David Hansen as provided for by 10 U.S.C. § 1501(d). Plaintiff,

as the designated Primary Next of Kin (PNOK) of Hansen, continues to suffer a legal wrong due to ongoing DPAA inaction and failure to carry out its ministerial duties, for which there is no adequate legal remedy.  Furthermore, ongoing DPAA inaction has substantially deprived Plaintiff of her rights to due process under the United States Constitution. Plaintiff is thus a proper party under the respective statutes and the United States Constitution.

7.     Douglas Arthur Kelder, nephew of Arthur H. Kelder, is the person designated by the Department of Defense to direct disposition of the remains of Arthur H. Kelder.  Plaintiff, as the designated Primary Next of Kin (PNOK) of Kelder, continues to suffer a legal wrong due to ongoing DPAA inaction and failure to carry out its ministerial duties, for which there is no adequate legal remedy.  Furthermore, ongoing DPAA inaction has substantially deprived Plaintiff of his rights to due process under the United States Constitution. Plaintiff is thus a proper party under the respective statutes and the United States Constitution.

8.     Defendants are the Defense POA/MIA Accounting Agency ("DPAA") and Fern Sumpter Winbush, in her official capacity as Interim Agency Director of DPAA; U.S. Department of Defense ("DOD"); James Mattis, in his official capacity as Secretary of Defense; the American Battle Monuments Commission ("ABMC"); Robert Dalessandro, in his official capacity as Acting Secretary of the ABMC .  Each Defendant is either an agency of the United States or an officer or employee of an agency of the United States

## II.

## JURISDICTION AND VENUE

9.     This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 28 U.S.C. §§ 1331 and 2201 and the Fifth Amendment and Fourteenth Amendment of the United States Constitution.  This Court has authority to order

declaratory relief under 28 U.S.C. § 2201 *et seq.* because there is a case or controversy between to the parties.  This Court has authority to issue a Writ of Mandamus under 28 U.S.C. § 1361 because Plaintiffs seek a writ requiring Defendants to comply with their ministerial duties as specified at 10 U.S.C. §§ 1501-1513, Army Regulation 638-2 and other policies and because there is no adequate legal remedy available to Plaintiffs.

10.    The Defendants in this action are either employees or officers of an agency of the United States and an agency thereof. Plaintiff Ruby Alsbury, David Alsbury and Ray Bruntmyer are residents of TX. Accordingly, venue is proper under 28 U.S.C. § 1391(e)(3).

## III.

## <u>RELATED LITIGATION</u>

11.    On September 28, 2010, a complaint was filed in this court, Eakin v. U.S. Department of Defense, SA10CA0748-FB, seeking records under the Freedom of Information Act. Records obtained during that litigation form the basis for this complaint.

12.    On October 18, 2012, a Petition for Writ of Mandamus was filed in this court, Eakin v. American Battle Monuments Commission, et al, SA-12-CA-1002-FB-HJB, to obtain the remains of Pvt. Arthur H. "Bud" Kelder.  Kelder's *partial* remains were recovered and successfully identified in response to this action thereby verifying the accuracy of the records and feasibility of identification of the remains.

## IV.

## FACTS

### A.    Remains X-1130

1.      U.S. Army First Lieutenant Alexander R. "Sandy" Nininger was killed in action on January 12, 1942 while serving in the province of Bataan, Philippine Islands.  He was posthumously awarded the Medal of Honor for his actions against the enemy.

2.      U.S. Government documents show that 1LT Nininger's remains were first buried at the Catholic Churchyard in Abucay, Bataan, Philippine Islands.  At the conclusion of hostilities, these remains were exhumed by U.S. Army Graves Registration personnel and given the designation X-1130 Manila #2 Cemetery.

3.      Five recommendations to identify remains X-1130 as 1LT Nininger were disapproved due to an erroneously calculated antemortum height which did not match 1LT Nininger's known height.

4.      Remains X-1130 were ultimately buried as an Unknown in Manila American Cemetery Grave J-7-20 where they presently lie.

5.      Plaintiff Patterson alleges that these are the remains of his uncle, 1LT Nininger.

### B.    Remains X-3629

1.      U.S. Army Colonel Loren P. Stewart was the Commanding Officer of the 45th Infantry Regiment, Philippine Scouts when he was killed in action on January 13, 1942.

2.      U.S. Government documents contain a witness account of his burial near Abucay Hacienda, Bataan, Philippine Islands.  At the conclusion of hostilities, these remains were exhumed by U.S. Army Graves Registration personnel and given the designation X-3629 Manila #2 Cemetery.

3.      Efforts to positively identify the remains were unsuccessful due to a misspelling of Colonel Stewart's name as STUART on a request for his antemortum dental records.

4.      Remains X-3629 were ultimately buried as an Unknown in Manila American Cemetery Grave N-15-19 where they presently lie.

5.      Plaintiff John Boyt alleges that these are the remains of his grandfather, Colonel Stewart.

C.      **Remains X-618**

1.      U.S. Army Brigadier General Guy O. Fort commanded the 81st Division (Philippines) and later guerrilla forces in the Philippine Islands when he was taken prisoner by enemy forces in September 1942.  Fort is the only American-born general officer to be executed by enemy forces.

2.      U.S. Government records contain a sworn witness statement by Ignacio S. Cruz, Governor of Misamis Oriental Province, which recounts the execution and burial of General Fort by enemy forces as retaliation for an attack on enemy forces.

3.      At the conclusion of hostilities, Governor Cruz directed the recovery of these remains and turned them over to U.S. Army Graves Registration personnel where they were designated as X-618 Leyte #1 Cemetery.  These remains are presently buried as an Unknown in Manila American Cemetery Grave L-8-113.

4.      Plaintiff Janis Fort alleges that these are the remains of her uncle, General Fort.

D.      **Remains from Cabanatuan Grave 822**

1.      U.S. Army Private Robert R. Morgan survived the infamous Bataan Death March and imprisonment at Camp O'Donnell, but ultimately succumbed to disease and malnutrition on January 1, 1943 while confined in Cabanatuan POW Camp, near Cabanatuan, Nueva Ecija, Luzon, Philippine Islands.

2.      Private Morgan was buried in communal grave number 822 as one of the five U.S. Servicemen who died on that day.

3.      At the conclusion of hostilities, U.S. Army Graves Registration personnel exhumed the remains in the camp cemetery.  The four from Grave 822 who could not be identified, including Private Morgan, were ultimately buried as Unknowns in the Manila American Cemetery where they presently lie.

4.      Plaintiff Alsbury alleges that the remains of her brother, Private Morgan, currently rest in the Manila American Cemetery.

**E.      Remains from Cabanatuan Grave 704**

1.      U.S. Army Private First Class Lloyd Bruntmyer survived the infamous Bataan Death March and imprisonment at Camp O'Donnell, but ultimately succumbed to disease and malnutrition on November 1, 1942 while confined in Cabanatuan POW Camp, near Cabanatuan, Nueva Ecija, Luzon, Philippine Islands.

2.      PFC Bruntmyer was buried in communal grave number 704 as one of the ten U.S. Servicemen who died on that day.

3.      At the conclusion of hostilities, U.S. Army Graves Registration personnel exhumed the remains in the camp cemetery.

4.      The eight from grave 704 who could not be identified, including PFC Bruntmyer, were ultimately buried as Unknowns in the Manila American Cemetery where they presently lie.

5.      Plaintiff Bruntmyer alleges that the remains of his brother, PRF Bruntmyer, currently rest in the Manila American Cemetery.

**F.      Remains from Cabanatuan Grave 407**

1.      U.S. Army Private First Class David Hansen survived the infamous Bataan Death March and imprisonment at Camp O'Donnell, but ultimately succumbed to disease and

malnutrition on June 28, 1942 while confined in Cabanatuan POW Camp, near Cabanatuan, Nueva Ecija, Luzon, Philippine Islands.

2.      PFC Hansen was buried in communal grave number 407 as one of the approximately seventeen U.S. Servicemen who died on that day.

3.      At the conclusion of hostilities, U.S. Army Graves Registration personnel exhumed the remains in the camp cemetery.  The six from grave 407 who could not be identified, including PFC Hansen, were ultimately buried as Unknowns in the Manila American Cemetery where they presently lie.

4.      Plaintiff Hensley alleges that the remains of her uncle, PFC Hansen, currently rest in Manila American Cemetery.

**G.      Remains from Cabanatuan Grave 717**

1.      U.S. Army Private Arthur H. "Bud" Kelder survived the infamous Bataan Death March and imprisonment at Camp O'Donnell, but ultimately succumbed to disease and malnutrition on November 19, 1942 while confined in Cabanatuan POW Camp, near Cabanatuan, Nueva Ecija, Luzon, Philippine Islands.

2.      Private Kelder was buried in communal grave number 717 as one of the fourteen U.S. Servicemen who died on that day.

3.      At the conclusion of hostilities, U.S. Army Graves Registration personnel exhumed the remains in the camp cemetery.  The ten from Grave 717 who could not be identified, including Private Kelder, were ultimately buried as Unknowns in the Manila American Cemetery.

4.      Beginning in 2014, the graves of the ten Unknowns buried in the Manila American Cemetery and the four Knowns buried in the U.S. were exhumed for identification.

5.      Each of the remains originally buried in Cabanatuan Grave 717 were virtually anatomically complete when exhumed.

6.      In 2015, the Kelder family received Kelder's skull, three long bones and a few other minor bones for burial.

7.      To date, only partial remains of Private Kelder have been returned to the Kelder family for burial.

8.      Plaintiff Kelder alleges that his uncle's remains currently rest with the DOD Central Identification Laboratory.

**V.**

**<u>CLAIMS</u>**

**A.      <u>Writ of Mandamus 28 U.S.C. § 1651</u>**

1.      The preceding sections and paragraphs of the Petition are incorporated herein as if set forth at length.

2.      10 U.S.C. § 1501 *et seq.* requires the DPAA to locate, recover and identify missing persons from past conflicts, or their remains, after hostilities have ceased.

3.      Hostilities in World War Two ended on 14 August 1945.

4.      10 U.S.C. § 1501 *et seq.* requires the DPAA to establish a means of communication between officials of the DPAA and family members of missing persons from past conflicts and concerned citizens, including a readily available means for communication of their views and recommendations, to the Agency Director.

5.      Plaintiffs and their families have expended innumerable hours over the course of decades identifying the location of the remains of their loved ones.

6.      The location of these remains is now ascertainable to precise common grave sites and exact individual grave markers.

7.     The DPAA and its predecessor agencies has failed and continues to fail in its ministerial duty to identify and recover these remains despite compelling evidence provided by Plaintiffs.

8.     The DPAA and its predecessor agencies has failed and continues to fail in its ministerial duty to identify and recover these remains despite there being an expedient and cost-effective means of doing so such as DNA testing.

9.     The DPAA and its predecessor agencies has failed and continues to fail in its ministerial duty to communicate with Plaintiffs in a readily available manner and instead has actively obstructed the Plaintiffs' attempts to exchange information with it.

10.     The DPAA and its predecessor agencies has used the procedures for seeking relief under 10 U.S.C. § 1501 *et seq.* and related statutes, regulations, formal guidance, white papers and administrative codes to frustrate their underlying purpose of identifying and recovering remains such that the Plaintiffs have been denied substantive due process under the 5th Amendment of the United States Constitution and no adequate legal remedy remains.

11.     As a result of the DPAA's continuing inaction and failure to carry out its ministerial duties, the Plaintiffs continue to suffer harm in that the remains of their loved ones killed overseas fighting for the United States that could be readily identified and returned have not been returned more than 70 years after the cessation of hostilities.

**B.     Declaratory Judgment 28 U.S.C. §§ 2201-02.**

1.     The preceding sections and paragraphs of the Petition are incorporated herein as if set forth at length.

2.     Under the Declaratory Judgment Act, the court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

3.     The Plaintiffs have filed this petition against the DPAA alleging that the DPAA has failed to perform a number of ministerial duties required by 10 U.S.C. § 1501 *et seq.,* including the DPPA's obligation to locate, recover and identify missing persons from past conflicts and its statutory obligation to provide a means of readily available communication with Plaintiffs.

4.     The DPAA and its predecessor agencies has used the procedures for seeking relief under 10 U.S.C. § 1501 *et seq.* and related statutes, regulations, formal guidance, white papers and administrative codes to frustrate their underlying purpose of identifying and recovering remains such that the Plaintiffs have been denied substantive due process under the 5th Amendment of the United States Constitution and no adequate legal remedy remains.

5.     The continuing failures and inaction of the DPAA and the Plaintiffs' objection to the same gives rise to a case and controversy between the parties.

6.     As a result of the DPAA's continuing inaction and failure to carry out its ministerial duties, the Plaintiffs continue to suffer harm in that the remains of their loved ones killed overseas fighting for the United States that could be readily identified and returned have not been returned more than 70 years after the cessation of hostilities.

7.     Plaintiffs are entitled under 28 U.S.C. § 2201-02 to a declaration of their rights and the responsibilities of DPAA under 10 U.S.C. § 1501 *et seq.* because:

a.     the remedies requested are practical and further efficient judicial administration; and

b.     it is within the Court's judicial function and power to do so; and

c.      granting such relief is consistent with traditional principles of equity, comity, and federalism; and

d.      the petition raises a concern sounding in substantive due process guaranteed by the United States Constitution; and

e.      clarification of the rights and obligations of the parties is manifestly in the public interest as thousands of other American citizens are similarly situated to Plaintiffs; and

f.      a declaratory judgment will serve a useful purpose by establishing a precedent for similarly situated American citizens and resolve the controversy between the parties.

## VI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against the Defendants and award Plaintiffs the following relief:

1.      An order, pursuant to 28 U.S.C. § 1361 that Defendants shall consider all new credible evidence of the identity of unidentified remains;

2.      An order, pursuant to 28 U.S.C. § 1361 that Defendants shall promptly disinter for identification all unidentified remains by DNA analysis upon a showing of a reasonable probability based on evidence of their identification or, provide alternative means for family members to act and identify the remains if the Defendants fail to promptly act;

3.      An order, pursuant to 28 U.S.C. § 1361 that Defendants shall promptly act to adopt and employ all reasonable forensic technologies in keeping with current forensic best practices which may assist in the efficient and timely identification of previously unidentified remains;

14

4. An order, pursuant 28 U.S.C. § 1361 enjoining Defendants from any further or ongoing violation of constitutionally protected rights including substantive due process rights and ordering that Defendants promptly provide for due process in consideration of new evidence as to the identity of unidentified remains;

5.     An order pursuant to 28 U.S.C. § 1361 ordering Defendants to reliably communicate with Plaintiffs as required by 10 U.S.C. § 1501 *et seq.* and enjoining them from committing further violations by failing to reliably communicate with Plaintiffs about the status of their cases;

6.     An order, pursuant to 28 U.S.C. § 2201(a) *et seq.* declaring that Defendants have wrongfully deprived families of deceased American service members of constitutionally protected rights to due process and possession of the remains of their family members;

7.     An order, pursuant to 28 U.S.C. § 2201(a) *et seq.* that certain of Defendants' policies, procedures, guidance, white papers and regulations concerning identification of unidentified remains including, but not limited to, DOD Directive Number 1300.22, May 25, 2011 Subject: Mortuary Affairs Policy, (CJCS) Joint Publication 4-06 Mortuary Affairs 12 October 2011 and U.S. Army Regulation 638-2, conflict with the plain meaning and intent of 10 U.S.C. § 1501 *et seq.*

8.     An order, pursuant to 28 U.S.C. § 2201(a) *et seq.* that certain of Defendants' policies concerning identification of unidentified remains were applied selectively and inconsistently and enjoining such future action;

9.     An order, pursuant to 28 U.S.C. § 2201(a) *et seq.* finding that Defendants have wrongfully withheld from Plaintiffs documents, information and communication in violation of the Freedom of Information Act and an order of this Court enjoining further violation;

15

10.     An order, pursuant to 28 U.S.C. § 2201(a) *et seq.* finding that Defendants have failed to readily communicate with Plaintiffs and enjoining further violation;

11.     An order, pursuant to 28 U.S.C. § 2201(a) *et seq.* that when Plaintiffs act in Defendants' absence to identify and recover remains, Defendants shall promptly reimburse all expenses incident to the recovery, care, and disposition of the remains of any missing U.S. Military personnel as provided for by 10 U.S.C. § 1482.

12.     That the Court retain jurisdiction in this case pending a substantial showing by Defendants that all possible unidentified remains will be identified in accordance with the Court's instructions;

13.     An award of Plaintiffs' costs and reasonable attorneys' fees, as appropriate; and

14.     An award of any further relief to Plaintiffs that this Court deems just, proper, and equitable.

Respectfully submitted, this 26th day of May, 2017.

CROSS, JENKS, MERCER & MAFFEI, LLP


___/s/ Benoit M. Letendre_____
Benoit M. Letendre, Pro Hac Vice
WI SBN 1079792
221 Third Avenue, PO Box 556
Baraboo, WI 53913
bletendre@cjmmlaw.com
Phone: (608) 402-8010




GENDRY & SPRAGUE, PC


___/s/Ron A. Sprague_____
Ron A. Sprague
TX SBN 18962100
Gendry & Sprague, PC
900 Isom Road, Suite 300
San Antonio, TX 78216
rsprague@gendrysprague.com
Phone: (210) 349-0511

Counsel for Plaintiffs