# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

JOHN A. PATTERSON, JOHN BOYT,　§
JANIS FORT, RUBY ALSBURY,　§
RAYMOND BRUNTMYER, JUDY　§
HENSLEY, DOUGLAS KELDER,　§
　§
    *Plaintiffs*,　§
　§
*v.*　§
　§    Civil Action No.  SA-17-CV-467-XR
　§
DEFENSE POW/MIA ACCOUNTING　§
AGENCY, DIRECTOR OF DPAA FERN　§
SUMPTER WINBUSH, U.S.　§
DEPARTMENT OF DEFENSE, SEC OF　§
DEFENSE JAMES MATTIS, AMERICAN　§
BATTLE MONUMENTS COMMISSION,　§
ROBERT DALLESSANDRO, IN HIS　§
OFFICIAL CAPACITY AS ACTING　§
SECRETARY AMERICAN BATTLE　§
MONUMENTS COMMISSION,　§
　§
    *Defendants*.　§

## ORDER

On this date, the Court considered the status of the above-captioned case. After careful consideration, the Court GRANTS Defendants' Motion to Dismiss. Docket no. 7.

## BACKGROUND

Plaintiffs filed their Petition for Writ of Mandamus and Declaratory Relief on May 25, 2017. Docket no. 1 Plaintiffs are the designated Primary Next of Kin ("PNOK") of Army service members who served in World War II and died while in service. *Id.* Plaintiffs' claims relate to deceased service members whose remains were not identified by the United States government and were buried as Unknowns. *Id.* at 2. Plaintiffs allege that Defendants have arbitrarily,

capriciously, and repeatedly refused to consider new evidence or conduct newer, more reliable, inexpensive, and readily available DNA sequencing tests to identify the remains. *Id.*

Plaintiffs identify seven separate remains, three of which are specifically designated by the United States government and four of which are identified by the communal grave in which they were originally buried: (1) X-1130, which Plaintiff John A. Patterson alleges are the remains of his uncle First Lieutenant Alexander R. "Sandy" Nininger; (2) X-3629, which Plaintiff John Boyt alleges are the remains of his grandfather, Colonel Loren P. Stewart; (3) X-618, which Plaintiff Janis Fort alleges are the remains of her uncle, Brigadier General Guy O. Fort; (4) remains from Cabanatuan Grave 822, which Plaintiff Ruby Alsbury alleges are the remains of her brother, Private Robert R. Morgan; (5) remains from Cabanatuan Grave 704, which Plaintiff Raymond Bruntmyer alleges are the remains of his brother, Private First Class Lloyd Bruntmyer; (6) remains from Cabanatuan Grave 407, which Plaintiff Judy Hensley alleges are the remains of her uncle Private First Class David Hansen; and (7) remains from Cabanatuan Grave 717, which Plaintiff Douglass Kelder allege are the remains of his uncle Private Arthur H. "Bud" Kelder. *Id.* at 7–11. Plaintiffs identify where the remains are currently buried or rest. *Id.*

Plaintiffs allege that they and their families have "expended innumerable hours over the course of decades identifying the location of the remains of their loved ones." *Id.* at 11. Plaintiffs allege the "location of these remains is now ascertainable to precise common grave sites and exact individual grave markers." *Id.* Plaintiffs allege that the Defense POW/MIA Accounting Agency ("DPAA") and its predecessor agencies have failed and continue to fail in their ministerial duties to identify and recover these remains "despite compelling evidence provided by Plaintiffs" and "despite there being an expedient and cost-effective means of doing so such as DNA testing." *Id.* at 12. Plaintiffs further allege the DPAA and its predecessor agencies fail in

2

their ministerial duties to "communicate with Plaintiffs in a readily available manner" and instead have actively "obstructed the Plaintiffs' attempts to exchange information with it." *Id.*

Plaintiffs allege they have been denied substantive due process under the Fifth Amendment of the United States Constitution due to Defendants' actions and no adequate legal remedy remains. *Id.* Plaintiffs state they continue to suffer harm because their loved ones' remains have not been returned more than seventy years after the cessation of hostilities. *Id.*

Plaintiffs seek orders pursuant to 28 U.S.C. §§ 1361 and 2201(a), including that Defendants consider new credible evidence to identify unidentified remains, Defendants use DNA analysis and all reasonable forensic technology, Defendants reliably communicate with Plaintiffs as required by 10 U.S.C. § 1501 *et seq*., certain of Defendants' policies conflict with 10 U.S.C. § 1501 *et seq.*, and Defendants be enjoined from further Constitutional violations and failing to reliably communicate with Plaintiffs. *Id.* at 14–16.

On September 13, 2017, Defendants filed a Motion to Dismiss for failure to state a claim and lack of jurisdiction, now pending before the Court. Docket no. 7.

## LEGAL STANDARD

The Court must dismiss a cause for lack of subject-matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *See Home Builders Assn. of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). A motion to dismiss for lack of jurisdiction under 12(b)(1) may be decided on: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts, plus the Court's resolution of disputed facts. *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009). Unlike a 12(b)(6) motion, the district court is

empowered to consider matters outside the complaint and matters of fact that may be in dispute in a 12(b)(1) motion. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). These elements are "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft v. Governor of Texas*, 562 F.3d 735, 745 (5th Cir. 2009) (citing *Lujan*, 504 U.S. at 560–61). Particularized means "that the injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n. 1. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. Because they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation. *Id.* At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561; *Public Citizen, Inc. v. Bomer*, 274 F.3d 212, 218 (5th Cir. 2001).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). In considering a motion

to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed favorably to the plaintiff. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## ANALYSIS

### I.    Mandamus Act Claims

Plaintiffs allege that the DPAA is required to locate, recover, and identify missing persons from past conflicts, or their remains, after hostilities have ceased, and that the DPAA must establish a means of communication between the DPAA and family members of missing persons and concerned citizens under 10 U.S.C. § 1501 *et seq*. Docket no. 1 at 11. Plaintiffs allege that the DPAA and its predecessor agencies have failed and continue to fail in their ministerial duties related to these alleged requirements and request the Court to order Defendants to take certain action with respect to these alleged ministerial duties pursuant to 28 U.S.C. § 1361. *Id.* at 12, 14–15. Defendants argue that Plaintiffs fail to establish that Defendants' alleged duties are nondiscretionary, a clear right to the relief sought, and that available remedies are inadequate. Docket no. 7 at 21, 26, 30.

Under the Mandamus Act, "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus relief is available only if a plaintiff establishes (1) a clear right to relief, (2) that the defendant has a clear duty to act, and (3) no other adequate remedy exists. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 768 (5th Cir. 2011). Mandamus is an "extraordinary remedy" and it is used "only to

compel the performance of a clear nondiscretionary duty." *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988).

To show that Defendants have a clear duty to act, Plaintiffs "must demonstrate that a government officer owes [Plaintiffs] a legal duty that is a specific, ministerial act, devoid of the exercise of judgment or discretion." *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997). "The legal duty must be set out in the Constitution or by statute and its performance must be positively commanded and so plainly prescribed as to be free from doubt." *Id.* (citation omitted).

As stated above, Plaintiffs allege that the DPAA is required to carry out ministerial duties related to identifying missing persons or their remains and communication between the DPAA and family members of missing persons. Under 10 U.S.C. § 1501, the DPAA's responsibilities include five categories of duties, such as the "[r]esponsibility for accounting for missing persons from past conflicts, including locating, recovering, and identifying missing persons from past conflicts or their remains after hostilities have ceased," the "[d]issemination of appropriate information on the status of missing persons from past conflicts to authorized family members," and the "[e]stablishment of a means for communication between officials of the designated Defense Agency and family members of missing persons from past conflicts, veterans service organizations, concerned citizens, and the public on the Department's efforts to account for missing persons from past conflicts." 10 U.S.C. § 1501(a)(2). Section 1501 clearly states, however, that these responsibilities are "[s]ubject to the authority, direction, and control of the Secretary of Defense." *Id.*

Plaintiffs fail to demonstrate that the DPAA's responsibilities are ministerial duties to support its mandamus claims. Although § 1501 identifies certain responsibilities of the DPAA,

Plaintiffs do not show that these responsibilities are "devoid of the exercise of judgment or discretion." First, § 1501 states that these responsibilities are subject to the "authority, direction, and control of the Secretary of Defense," indicating that the responsibilities are carried out at the discretion of the Secretary of Defense. 10 U.S.C. § 1501(a)(2).

Also, the statutory language indicates the individual responsibilities involve an exercise of discretion. When handling "new information" related to persons who are unaccounted for, the DPAA must determine if any new information is "credible," § 1509(e)(3), and if that information is passed on to the Secretary of Defense, the Secretary will determine, with the advice of the missing person's counsel, "whether the information is significant enough to require a board review." § 1505(c)(3). *Cf. Newsome v. E.E.O.C.*, 301 F.3d 227, 231 (5th Cir. 2002) (finding that although Title VII states the EEOC "shall make an investigation" of a charge filed, "the nature and extent of an EEOC investigation into a discrimination claim is a matter within the discretion of that agency"). Further, the DPAA must establish a means for communication between its officials and family members, which includes a "readily available means for communication" between the DPAA and interested parties. 10 U.S.C. § 1501(a)(2)(E). The statute, however, does not compel "specific, ministerial acts" that are "devoid of the exercise of judgment or discretion" as to how this means for communication is initially established, much less how communication is carried out after a system is established. Because the DPAA may exercise discretion with respect to its individual responsibilities, and the DPAA's actions are themselves subject to the authority, direction, and control of the Secretary of Defense, Plaintiff fails to show that the DPAA has a clear duty to act as required by the Mandamus Act.

Plaintiffs further allege that Defendants have used the procedures for seeking relief to frustrate the "underlying purpose of identifying and recover remains such that Plaintiffs have

been denied substantive due process" under the Fifth Amendment. Docket no. 1 at 12. Plaintiffs do not clearly allege of which specific Constitutional right they have been deprived. Further, for the Constitution to support a Writ of Mandamus, the Court must "infer from it a clear, ministerial duty." *Duchow v. United States*, No. 95-2121, 1995 WL 425037, at *2 (E.D. La. July 19, 1995), *aff'd*, 114 F.3d 1181 (5th Cir. 1997). As stated above, Plaintiffs fail to identify any clear ministerial duties, and the Court finds "no such clearly prescribed duty." *Id.* Plaintiffs fail to state a valid claim that they have been denied substantive due process under the Fifth Amendment.

Plaintiffs only state claims related to responsibilities of the DPAA. Docket no. 1 at 11–12. Plaintiffs do not allege any other responsibilities of the DOD or the American Battle Monuments Commission ("ABMC"). To the extent that Plaintiffs attempt to raise new claims in their Response to Defendants' Motion to Dismiss, such statements do not state valid claims against Defendants. *See Davis v. DRRF Tr. 2015-1*, No. 5:15-CV-880 RP, 2016 WL 8257126, at *3 (W.D. Tex. Jan. 6, 2016) (declining to consider plaintiff's claim not raised in original petition, but raised for first time in response to motion to dismiss); *see also Hearn v. Deutsche Bank Nat. Trust Co.*, No. 3:13-CV-2417-B, 2014 WL 4055473, at *4 (N.D. Tex. Aug. 15, 2014) ("[W]hen considering a motion to dismiss, the Court generally only relies on the allegations made in the pleadings, and does not base its decision on allegations raised for the first time in . . . the plaintiff's response."). Accordingly, Plaintiffs fail to show that the DOD or ABMC have a clear duty to act as required by the Mandamus Act.

Because the Court finds that Plaintiffs have failed to show that Defendants have a clear duty to act, the Court need not address whether Plaintiffs sufficiently plead that they are entitled to "a clear right to relief" or that "no other adequate remedy exists." Accordingly, Plaintiffs fail to state a valid claim under the Mandamus Act.

## II.    Declaratory Judgment

Plaintiffs claim they are entitled to a declaration of their rights under 10 U.S.C. § 1501 *et seq.* pursuant to the Declaratory Judgment Act. Docket no. 1 at 13. Plaintiffs request a Court order seeking injunctive relief and certain declarations with respect to Defendants' alleged responsibilities, actions, and violations. *Id.* at 15–16. Defendants argue these claims should be dismissed for lack of jurisdiction or failure to state a claim. Docket no. 7 at 32–35.

As an initial matter, regarding Plaintiffs' requests for injunctive relief, the Fifth Circuit has held that the "plain language of [the Mandamus Act] is clear that it only grants jurisdiction to consider a mandamus action; it does not grant jurisdiction to consider actions asking for other types of relief—such as injunctive relief." *Randall D. Wolcott*, 635 F.3d at 766; *see* 28 U.S.C. § 1361. Nor can Plaintiffs point to the Declaratory Judgment Act, 28 U.S.C. § 2201, as a basis for jurisdiction for requested injunctive relief because the Declaratory Judgment Act does not provide an independent basis for subject matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950); *Mustafa v. Pasquerell*, No. 05-CA-658-XR, 2006 WL 488399, at *2 (W.D. Tex. Jan. 10, 2006). Accordingly, the Court lacks jurisdiction to grant Plaintiff's requested injunctive relief.

Further, to get relief under the Declaratory Judgment Act, Plaintiffs must bring a valid claim for an independent cause of action that provides the Court with subject-matter jurisdiction. *See Skelly Oil Co.*, 339 U.S. at 671–72. As discussed above, Plaintiffs fail to state a valid claim under the Mandamus Act. Accordingly, Plaintiffs fail to demonstrate that the Court has jurisdiction to grant the requests for relief related to 10 U.S.C. § 1501 *et seq*.

Plaintiffs request a declaration that Defendants wrongfully withheld documents, information, and communication from Plaintiffs in violation of the Freedom of Information Act

("FOIA"). Docket no. 1 at 15. Plaintiffs, however, fail to state a claim under the FOIA; therefore, the Court cannot grant Plaintiff's requested relief.

Plaintiffs also request a declaration that Defendants wrongfully deprived service members' families of "constitutionally protected rights to due process and possession of the remains of their family members." *Id.* at 15. As discussed above, however, Plaintiffs fail to state which constitutional right of which they have been deprived, and they allege no ministerial duty with respect to the Mandamus Act.

Finally, Plaintiffs request an order related to the reimbursement of expenses "incident to the recovery, care, and disposition of the remains of any missing U.S. Military personnel as provided for by 10 U.S.C. § 1482." Docket no. 1 at 16. Plaintiffs, however, fail to demonstrate how the Court has jurisdiction over such claims because they do not indicate that Congress intended § 1482 to create a right and a remedy that is privately enforceable. *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001) (holding that "private rights of action to enforce federal law must be created by Congress" and absent an "intent to create not just a private right but also a private remedy," "a cause of action does not exist and courts may not create one").

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED. Docket no. 7. Accordingly, all of Plaintiffs' claims against Defendants are DISMISSED WITHOUT PREJUDICE, WITH LEAVE TO AMEND. It is further ORDERED that Plaintiffs shall have until **December 4, 2017**, to file an amended complaint. If Plaintiffs file an amended complaint, the parties shall file a Joint Proposed Scheduling Order.

It is so ORDERED.

SIGNED this 20th day of November, 2017.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE