# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOHN A. PATTERSON, et al., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Civil Action No. SA-17-CV-467-XR |
| | § | |
| DEFENSE POW/MIA ACCOUNTING | § | |
| AGENCY, et al., | § | |
| | § | |
| *Defendants*. | § | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Alexander R. Nininger, Loren P. Stewart, Guy O. Fort, Robert R. Morgan, Lloyd Bruntmyer, David Hansen, and Arthur H. Kelder answered their country's call to duty in World War II. Each made the ultimate sacrifice. First Lieutenant Nininger and Colonel Stewart were killed in action. General Fort was executed after being taken prisoner. Private Morgan, Private First Class Bruntmyer, Private First Class Hansen, and Private Kelder died while being held in a prisoner of war camp. Notwithstanding giving their last full measure of devotion to this country, the Government[1] declines to allow their Families[2] to provide them a decent burial in a marked grave. No soldier should be left behind. This case is about bringing these soldiers home.

---

[1] Defense POW/MIA Accounting Agency ("DPAA"), Director of the DPAA Kelly McKeague, United States Department of Defense, Secretary of Defense James Mattis, American Battle Monuments Commission ("ABMC"), and Secretary of the ABMC William Matz are referred herein collectively as the "Government."

[2] John A. Patterson ("Patterson"), John Boyt ("Boyt"), Janis Fort ("Fort"), Ruby Alsbury ("Alsbury"), Raymond Bruntmyer ("Bruntmyer"), Judy Hensley ("Hensley"), and Douglas Kelder ("Kelder") are referred herein collectively as the "Families."

## SUMMARY

Before the Court is the Government's Motion for Judgment on the Pleadings. The Government attacks the Families' causes of action on several different broad grounds and sets aside numerous issues of fact in dispute. Specifically, the Government focuses primarily on attacking the Due Process violation claims, but fails to adequately address the significant dispute between the parties concerning whether all the remains at issue have been found. As set forth in this Response, the Amended Complaint provides fair notice of the Families' claims and the facts alleged sufficiently show a plausible claim for relief for each cause of action asserted. Accordingly, the Government's motion should be denied.

Additionally, the Government's motion presents pages of background information and alleged facts. Many facts concerning the remains at issue are incorrect, as shown in more detail below. Nevertheless, the Families object to the consideration of any factual allegations contained in the motion that were not included in the Amended Answer. While the Families would like to provide an extensive background of their own covering the history of the DPAA and its predecessors, they understand that the Court's valuable time and resources should be used analyzing the merits of the motion instead.

## ARGUMENTS AND AUTHORITIES

### I.     Standard of Review

This Court is well familiar with the standard applied to a motion for judgment on the pleadings. "The standard of review for evaluating 12(c) motions is the same as the standard for evaluating 12(b)(6) motions." *Preiss v. Deutsche Bank Nat. Tr. Co.*, 5:14-CV-00395-DAE, 2014 WL 3952820, at *1 (W.D. Tex. Aug. 13, 2014) (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The court determines "whether, in the light most favorable to the plaintiff, the

complaint states a valid claim for relief." *Hughes v. The Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001). In doing so, "the district court must accept as true all factual allegations in the complaint." *Kansa Reinsurance Co., Ltd. V. Cong. Mortg. Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994); *Doe*, 528 F.3d at 418; *see also Jones v. Compass Bancshares Inc.*, 339 F. App'x 410, 411 (5th Cir. 2009) (per curiam). Additionally, not only the facts but also the inferences to be drawn from them "must be viewed by the Court in light most favorable to the nonmoving party." *United States v. Gen. Motors Corp.*, 702 F. Supp. 133, 136 (N.D. Tex. 1988) (citing Wright & Miller, Federal Practice and Procedure: Civil, § 1368 (1969) (collecting cases)); *accord Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) ("We make all inferences in a manner favorable to the plaintiff . . . ."). Accordingly, the court's "inquiry focuses on the allegations in the pleadings and not on whether the plaintiff has sufficient evidence to succeed on the merits." *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009).

Judgment on the pleadings is appropriate only in rare circumstances—namely where "the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Id.* A defendant should not succeed on its motion for judgment on the pleadings if the allegations in the plaintiff's complaint, if proved, would permit recovery on those claims. *See Inst. for Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir.), cert. denied, 502 U.S. 909 (1991). As this Court has noted in its Standing Order, Rule 12 motions generally lack merit.

## II.     The Motion Must be Denied Because There are Significant Issues of Fact in Dispute

As an initial matter, the Government's motion is not well taken and should be denied because there are numerous issues of fact in dispute. For example, there are factual disputes regarding the reasonableness of the Government's actions and what process should be provided. The most important factual dispute, however, is whether the remains have been located and/or identified. The Families contend that their family members' remains have been located and/or identified, while the Government alleges that three of the remains have not.

It appears that the government has conceded during this lawsuit that the location of the remains of Lloyd Bruntmyer, David Hansen, Arthur Kelder, and Robert Morgan has likely been established. Doc. 31 at 11-13. In fact, the DPAA has recommended disinterment of Lloyd Bruntmyer and Robert Morgan. *Id.* It also appears that the DPAA would recommend disinterment of David Hansen, but does not believe that it has enough eligible family reference samples for DNA testing.[3] *Id.* at 19. Arthur Kelder's remains have already been disinterred, but only a small portion has been returned to the family.

For the three other service members, the Government attacks the merits of the Families' factual claim that they have been identified and/or located.

- Loren Stewart: As stated in the Amended Complaint, Colonel Stewart's remains were originally recovered by members of the 45th and 57th Philippine Scouts. These Philippine Scouts knew who Colonel Stewart was before his death. For example, a letter from Colonel Stewart, dated November 20, 1941, discusses being recognized by members of the Philippine Scouts. These Philippine Scouts are who recovered his remains. A witness, Ruben Caragay,

---

[3] This further shows the DPAA's inadequate DNA testing capabilities.

identified where Colonel Stewart was buried. He describes the Philippine Scouts' recovery and burial of Colonel Stewart's remains, which were exhumed by U.S. Army Graves Registration personnel and given the designation X-3629 Manila #2 Cemetery. Efforts to identify Colonel Stewart failed because of a misspelling of his name as "Stuart" on a request for ante-mortem dental records. In its motion, the Government recognizes the statement provided by Ruben Caragay. Unfortunately, the Government misstates the Infantry Division that Colonel Stewart was with and where his remains were originally exhumed. Importantly, the Government does not provide any reasons why the Families' factual allegations should be discredited.[4]

- <u>Guy Fort</u>: Like Colonel Stewart's case, there is a sworn statement recounting the death of General Fort in detail. The Governor of Misamis Oriental Province directed the recovery of the remains of General Fort and turned them over to U.S. Army Graves Registration personnel. This factual allegation is not denied. Instead, the Government claims that there is a conflicting account and incorrectly states that a witness reported that the execution occurred in the town of Dansalan. Another problem for this argument is that the majority of the account is consistent with the Governor's sworn statement. Nonetheless, this goes toward the merits of the Families' factual claims and does not make the allegations conclusory. The court must accept the Families' specific factual allegations as true.

- <u>Alexander Nininger</u>: The Government incorrectly states that 1LT Nininger's remains were exhumed a half mile away from the church. The remains were exhumed from the Abucay Church yard as described in the relevant X file. There have been at least <u>five</u> recommendations

---

[4] Only two American Colonels were killed in the Philippines during January of 1942. One was Colonel Stewart. The other was a Colonel John O. Hoskins. Colonel Hoskins was killed on the Bataan West Coast Road, which was the opposite coast from where Colonel Stewart's remains were buried. His remains were initially declared not found, but remains X-3027 Manila Mausoleum/X-1835 Manila #2 were recommended as a match.

to identify remains X-1130 as 1LT Nininger. The reason the recommendations were disapproved was because of an erroneously calculated ante-mortem height. The tables used in 1LT Nininger's case to convert long bone length to height were inaccurate. The records show that the remains identified as X-1130 are 1LT Nininger. The Government simply has some doubt - possibly because of other mistakes that the Government has made in the identification process. This is not enough to defeat the factual claims made by the Families. The Court must accept the Families' specific factual allegations as true.

These issues of fact form the primary basis for several of the Families' claims. Moreover, there is a pending motion to compel before the Court that will provide further evidence to establish the validity of the Families' factual claims that are in dispute. While the Government would like for this case to be decided without such discovery taking place, judgment would be improper with such material facts still in dispute. Again, the Court must construe the Families' pleadings liberally and accept their factual allegations as true. *See Jones*, 339 F. App'x at 411. Moreover, not only the facts but also the inferences to be drawn from them must be viewed by the Court in light most favorable to the Families. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). Accordingly, this is not one of the rare circumstances where this type of motion should be granted.

### 1. *Unfortunately, The Government Confuses the Relief Sought by the Families*

Throughout its motion, the Government attempts to restate the Families' claims as requesting something other than what is stated in the pleadings. For example, the Government alleges that "this case is not about refusing to return identified remains to family members for burial." Doc. 31 at 16. This ignores the primary relief sought by the Families in their Complaint, which is for the possession of their family members' remains for purposes of providing a proper burial. *See* Doc. 19 at 19. This may be an attempt to escape the obvious dispute of material facts

concerning the identification and location of the service members' remains. The Court should not allow the Government to transform the Families' claims into something they are not.

### III.     The Families Have Stated a Claim for Relief Under the Due Process Clause

The Government concentrates its attack on the Families' Due Process claims. In doing so, the Government attempts to hide the issues of fact that are in dispute and unilaterally change the relief sought by the Families. Consequently, the majority of the Government's arguments are irrelevant because they attack a position that has not been taken by the Families. The attempt to transform the Families' factual and legal claims should be rejected. Contrary to the Government's suggestion, the Families contend that the remains of their family members have been located and/or identified. Accordingly, the Government cannot lawfully deprive the Families from exercising their Constitutionally protected right to bury their relatives' remains without Due Process.

As shown in the Amended Complaint, the Families have provided fair notice of their Procedural and Substantive Due Process claims. For their Procedural Due Process claim, the Families must allege facts that infer that (a) they have a cognizable life, liberty, or property interests as the next of kin of deceased service members to receive their deceased's remains, (b) that the remains are in the possession of the Government, and (c) the Government has refused to return the remains to the Families without reasonable due process. For their Substantive Due Process claim, the Families must allege facts that infer that (a) they have cognizable, substantive life, liberty, or property interests as the next of kin of deceased service members to receive their deceased's remains, (b) that the remains are in the possession of the Government, and (c) the Government has refused to return the remains to the Families without sufficient justification.

The Government does not appear to dispute that the remains at issue are in the Government's possession.  Furthermore, the Government does not dispute that it has refused to return the remains to the Families. Thus, the only allegations of the Families' Due Process claims called into question are: (1) whether the Families have a cognizable interest as the next of kin to receive and bury their deceased's remains; (2) whether the Government has refused to return the remains to the Families without reasonable due process; and (3) whether the Government has refused to return the remains to the Families without sufficient justification.

**A. The Families Have a Cognizable Life, Liberty, and/or Property Interest as the Next-of-Kin of Deceased Service Members to Receive and Bury their Deceased's Remains**

Property rights are established from independent sources, such as state law, but not from the Constitution. *Arnaud v. Odom*, 870 F.2d 304, 308 (5th Cir. 1989). While "an independent source such as state law" creates the underlying substantive interest, "federal constitutional law determines whether that interest rises to the level of a `legitimate claim or entitlement' protected by the Due Process Clause." *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 9 (1978). Consequently, this Court must answer two questions regarding the Families' Due Process claims:

 (1) Is there is an independent source recognizing the Families right to bury their relative's remains?

(2) If such a right exists, does that right rise to the level of a legitimate claim or entitlement protected by the Due Process Clause?

**1. The Fifth Circuit Has Already Found that the Families' Rights are Protected by the Due Process Clause**

In regards to the second question, the Fifth Circuit has already answered in the affirmative. The Fifth Circuit has held that the right of survivors, recognized by a state's jurisprudence, "in the remains of their deceased relatives" qualifies as a property interest protected by the Due Process

Clause. *Arnaud*, 870 F.2d at 308. In *Arnaud*, the Fifth Circuit found that Louisiana jurisprudence had established a "quasi-property" right of survivors in the remains of their deceased relatives. *Id.* The Court concluded that such a right qualified for protection under the Due Process Clause. *Id.* Other district courts within the Fifth Circuit have also answered the second question in the affirmative. *See Bynum v. City of Magee, Miss.*, 507 F. Supp. 2d 627, 638 (S.D. Miss. 2007) ("Under Mississippi law, deceased's next of kin and relatives have a due process property interest, or quasi-property interest, to custody or possession of the body for burial."). Moreover, many other circuit courts of appeals have reached a similar conclusion and have provided detailed analysis.[5] On the other hand, the Government has not found any federal circuit courts of appeals that have reached a conflicting conclusion.

A helpful case is *Martin v. Kim*, where a federal district court denied a Rule 12(c) motion challenging procedural and substantive Due Process claims brought by a deceased's next of kin. 2:03 CV 536, 2005 WL 2293797, at *1 (N.D. Ind. Sept. 19, 2005) (the motion was filed as a motion to dismiss for failure to state a claim, but the court treated it as a Rule 12(c) motion). There, the court analyzed and discussed the case law cited in Footnote 5 of this Response, as well as other relevant case law. *Id.* at *3. It concluded that the next of kin had a cognizable right to designate

---

[5] *See Newman v. Sathyavaglswaran*, 287 F.3d 786, 798 (9th Cir. 2002) (holding that next of kin have the right to possess the bodies of their deceased family members, which creates a property interest that must be accorded due process of law); *Whaley v. County of Tuscola,* 58 F.3d 1111, 1116 (6th Cir. 1995) (the survivors' right, recognized by Michigan, to possess the body of the deceased for burial and prevent its mutilation qualifies as a due process property interest); *Brotherton v. Cleveland*, 923 F.2d 477, 482 (6th Cir. 1991) ("We hold the aggregate of rights granted by the state of Ohio to Deborah Brotherton rises to the level of a 'legitimate claim of entitlement' in Steven Brotherton's body, including his corneas, protected by the due process clause of the fourteenth amendment."); *Fuller v. Marx,* 724 F.d 717, 719 (8th Cir. 1984) (the next of kin's "quasi-property right in a dead body," recognized by Arkansas, qualifies as a due process property interest).

the manner, type, and selection of the final disposition of the deceased, which amounted to a "legitimate claim of entitlement" protected by the Due Process Clause. *Id.* at *5. The court relied upon the Sixth Circuit's approach taken in *Brotherton* and *Whaley,* and held that the next of kin sufficiently stated a procedural due process claim. *Id.* Additionally, the court also found that the next of kin had sufficiently stated a substantive due process claim because the factual allegations, taken as true, showed that the defendants had acted capriciously and without any governmental interest. *Id.* at *6-7. Finally, the court denied the request by the movant to initiate a fact-intensive inquiry because it was ill-suited for a motion to dismiss. *Id.* at *6. Accordingly, the court denied the Rule 12(c) motion.[6]

The Government relies on two arguments in their attempt to avoid the Fifth Circuit's holding. First, the Government contends that the Families "cannot show that they have a 'legitimate claim' to the dozens of unidentified remains they want to test in the hope of finding their relatives." Doc. 31 at 19. As an initial matter, this argument is irrelevant because it attacks a position not taken by the Families in regards to their Due Process claim. It ignores the Families' contention that the remains have been identified and located. The Government appears to confuse the relief sought in the Complaint with the relief sought in the Families' pending Motion to Compel by jumping into an argument against a right to DNA testing. Additionally, this is an issue of fact that is in dispute, which precludes any motion for judgment on the pleadings. The Families have stated sufficient facts supporting their claim that the remains have been identified and their location known. Further, the argument is belied by the Government's admission that it believes the remains of Robert Morgan, Lloyd Bruntmyer, David Hansen, and Arthur Kelder have been located. Doc.

---

[6] The court also found that the next of kin sufficiently stated a claim for relief under the Fourth Amendment. It could find no case that would prevent the next of kin's interest from receiving Fourth Amendment protection.

31 at 11-13. Finally, the Government's discussion of future property interests is irrelevant, and incorrect, because it once again ignores the issue of fact that is in dispute regarding the identity of the remains.

Second, the Government contends that there is no property interest because the remains are currently located in a military cemetery. This argument is nonsensical because the Government intends to eventually disinter all of the remains at issue. This is not a permanent resting place for the remains. The Government fails to cite any case law from a federal court supporting its position, and instead relies upon inapplicable case law that does not discuss temporary burials. Furthermore, the Government has stated that it is of the highest national priority to account for service members and that they will be returned to their families. DoD Directive 2310.07 § 1.2(a) (Apr. 12, 2017); DoD Directive 1300.22, Mortuary Affairs Policy § 3 (Oct. 30, 2015). This completely contradicts the Government's argument that the temporary burial terminates the Families' rights. Finally, the Government's continued discussion of DNA testing is irrelevant for purposes of this motion.

In sum, the Fifth Circuit has concluded that a right to bury a relative's remains qualifies as a property interest protected by the Due Process Clause. *Arnaud*, 870 F.2d at 308.

## 2. Our Society Places a Premium Value on Protecting the Right to Bury a Relative's Remains

Returning now to answer the first question - there is clearly an independent source recognizing the Families' right to bury their relative's remains. Our society has historically placed a premium value on protecting the dignity of the human body in its final disposition. *Newman v. Sathyavaglswaran,* 287 F.3d 786, 798 (9th Cir. 2002). Indeed, "the property interests of next of kin to dead bodies are firmly entrenched in the 'background principles of property law,' based on values and understandings contained in our legal history dating from the Roman Empire." *Id.* at

797. Such property interests make sense because "[p]roperty rights serve human values" and "[t]hey are recognized to that end." *Id.* at 798.

Whether an interest is labeled as "quasi property" or something else is not dispositive. "[T]he identification of property interests under constitutional law turns on the substance of the interest recognized, not the name given that interest by the state." *Id.* 797. For example, in *Whaley v. County of Tuscola*, the Sixth Circuit recognized that next of kin in Michigan possessed constitutionally protected property rights to the corneas of deceased relatives even though "Michigan has repeatedly emphasized" that recovery for violation of the rights of next of kin " 'is not for the damage to the corpse as property.' " 58 F.3d 1111, 1116 (6th Cir. 1995).

In the present case, there are multiple independent sources recognizing the Families' right to bury their relatives' remains.  First, there is a deeply rooted common law principle, applicable in all jurisdictions, establishing the next of kin's entitlement to possess, control, and bury the remains of their loved ones. *Newman,* 287 F.3d at 790. Second, this common law principle has been recognized and accepted in each applicable state. Again, the "determination does not rest on the label attached to a right granted by a state but rather on the substance of that right." *Brotherton v. Cleveland*, 923 F.2d 477, 482 (6th Cir. 1991). Thus, it is not necessary for a state to formally label an interest as a "quasi property" right. *See id.* Finally, the Government's requirement that remains be returned to their families for burial further establishes a substantive interest that rises to a legitimate claim of entitlement to the remains.

i.    **Each State's Jurisprudence Establishes the Right to Bury a Relative's Remains**

The Government erroneously argues that no jurisprudence from any state should be considered. When a court asks whether a next of kin has a right to bury a relative's remains, it looks to the law of where the next of kin resides, together with core common law rights. *See*

*Arnaud*, 870 F.2d at 308; *Newman,* 287 F.3d at 790; *Brotherton*, 923 F.2d at 482; *Fuller v. Marx*, 724 F.2d 717, 719 (8th Cir. 1984); *Bynum*, 507 F. Supp. 2d at 638. None of the cases cited by the Government hold that the law where the remains are currently located should be exclusively applied. Accordingly, it is proper for this court to consider the jurisprudence from each respective state that a Plaintiff resides in. This jurisprudence should be considered in addition to the general common law principle recognizing the next of kin's right to bury, which has been consistently defended by the judiciary. *See Travelers Ins. Co. v. Welch*, 82 F.2d 799, 801 (5th Cir. 1936) (next of kin has right to possess, preserve, and bury relative's remains); *Newman,* 287 F.3d at 796.

The Government relies upon two state court opinions for the proposition that this court should only consider the state code of where the remains are currently located. First, the opinions cited by the Government do not support such a position. The two cases concern probate matters and merely point out that a court in one state could not order a disinterment in another. *Unger v. Berger*, 76 A.3d 510, 516 (Md. Ct. Spec. App. 2013) (state probate court could not order disinterment in another state); *In re Estate of Medlen*, 677 N.E.2d 33, 37 (1997) (same). Neither case involved the federal government or the Due Process Clause. Second, to reach this conclusion, the Government would necessarily have to admit that the location and identity of all of the Remains is known. Third, such a contention is nonsensical because it would allow the Government to move a person's property to another location outside of a state where the law may be more favorable to the Government. Finally, if the "most significant relationship" test does apply, then the jurisdictions with the most significant relationship are where the Families currently reside. It is the Families' rights that are being deprived – that is the right to receive and bury their relative's remains. The Families are not necessarily required to establish a property right <u>in the remains themselves</u>. Instead, the Families need only to establish a cognizable life, liberty, and/or quasi-

property right <u>to bury the remains</u>.[7] Thus, the jurisdictions where the Families reside have the most significant relationship to the substantive interest that is at stake.

Here, the Families reside in Rhode Island, California, Texas, New Mexico, and Wisconsin. The Government does not dispute that Rhode Island, Texas, and New Mexico have established in their jurisprudence the next of kin's right to bury a relative's remains and consider it a quasi property right.[8] Instead, the Government merely disputes whether the interest recognized in those states qualifies as a property interest protected by Due Process. Again, this argument fails because the Fifth Circuit has concluded that the interests do qualify for protection under the Constitution. *See Arnaud*, 870 F.2d at 308.

As for California and Wisconsin, the Government contends that those states do not recognize a property interest in remains. These contentions fail. Contrary to the Government's argument, "California courts recognize 'a quasi-property right to its possession . . . for the limited purpose of determining who shall have its custody for burial." *Shelley v. County of San Joaquin*, 996 F. Supp. 2d 921, 927 (E.D. Cal. 2014). This has been consistently recognized in California. *Spates v. Dameron Hosp. Assn.*, 114 Cal. App. 4th 208, 221, 7 Cal. Rptr. 3d 597, 608 (2003) (courts have recognized "quasi-property right in the body of a deceased for purposes of burial or other disposition"). Even the cases cited by the Government recognize that there is a quasi property right for the purposes of burial. *See Perryman v. County of Los Angeles*, 153 Cal. App. 4th 1189, 63 Cal. Rptr. 3d 732, 739 (2007), review granted and opinion superseded, 171 P.3d 2 (Cal. 2007) (listing numerous cases recognizing quasi property right).

---

[7] This key distinction is vitally important because the Government's arguments and case law focus on a complete right to remains as they were without mutilation. In doing so, the Government's attacks have missed their mark. All that is needed is a cognizable right to bury the remains.

[8] Case law showing such jurisprudence is cited in the Amended Complaint. Doc. 19 at 16-17.

Plaintiffs' Response in Opposition to                                                   14
Defendants' Motion for Judgment on the Pleadings

For Wisconsin, the Government cites *Scarpaci v. Milwaukee County*, where the Wisconsin Supreme Court stated that: "The law is clear in this state that the family of the deceased has a legally recognized right to entomb the remains of the deceased family member in their integrity and without mutilation." 96 Wis.2d 663, 292 N.W.2d 816, 820 (1980). The court found that the basis for damages in a mutilation case is a violation of a personal right to bury the body. *Id.* However, this does not mean that there is no cognizable property interest. Again, whether an interest is labeled as "quasi property" or something else, such as a personal right, is not dispositive. "[T]he identification of property interests under constitutional law turns on the substance of the interest recognized, not the name given that interest by the state." *Newman,* 287 F.3d at 797. As discussed above, in *Whaley*, the Sixth Circuit held that there was a constitutionally protected property right to corneas of deceased relatives even though the state had repeatedly emphasized that recovery for violation of the rights of next of kin "is not for the damage to the corpse as property." *Whaley*, 58 F.3d at 1116 (quoting *Keyes v. Konkel*, 78 N.W.2d 649, 649 (1899)).[9] Even if Wisconsin does not label the right as "quasi property," the state does recognize a next of kin's right to bury a relative's remains, which has been found to be a cognizable right entitled to due process protection. *See Whaley*, 58 F.3d at 1116.

Accordingly, case law from each jurisdiction, along with the statutes cited therein, recognizes a substantive interest establishing a next of kin's right to bury a relative's remains.

---

[9] The Government also cites *Olejnik v. England* in support of its positon. 147 F. Supp. 3d 763, 773 (W.D. Wis. 2015). There the court found that parents did have the right to control final disposition of a decedent's remains. However, while there was a legally recognized interest in a body's remains under Wisconsin law, the court did not find that it was a constitutionally protected property right. This case addresses the second question discussed above – whether the right rises to the level of a legitimate claim or entitlement protected by the Due Process Clause - and contradicts the law within the Fifth Circuit.

### ii.    Federal Common Law Establishes the Right to Bury a Relative's Remains

Even if no state jurisprudence applied, Federal courts have established a common law principle recognizing the next of kin's entitlement to possess, control, and bury the remains of their loved ones. *See Newman,* 287 F.3d at 795-98. It is a core common law right. The Fifth Circuit has found that "the right to possess, preserve, and bury [remains] belongs . . . to the next of kin, who may maintain an action for a deprivation of the right of sepulcher or a mutilation of the body." *Travelers Ins. Co. v. Welch*, 82 F.2d 799, 801 (5th Cir. 1936). Consequently, if the Government's claim were true that federal common law applied, their argument would still fail because the federal common law recognizes the Families' entitlement to bury their relatives' remains. *See id.* There is no federal statute contradicting the common law's application to this case. Instead, every policy and regulation supports the position that the remains must be returned to the Families for proper burial.

Moreover, it is highly doubtful that a state or government entity could alter the Families' property interest as suggested in the Government's motion. As stated by one court:

> Because the property interests of next of kin to dead bodies are firmly entrenched in the "background principles of property law," based on values and understandings contained in our legal history dating from the Roman Empire, [a state] may not be free to alter them with exceptions that lack "a firm basis in traditional property principles."[10]

Indeed, for more than a century, courts have protected families from attempts by the government to deprive families of the remains of their relatives. For example, the Indiana Supreme Court held that a city council could not "seize upon existing private burial grounds, make them public, and

---

[10] *Newman,* 287 F.3d at 797-98 (quoting *Phillips v. Washington Legal Found*, 524 U.S. 156, 165-68 (1998); *see also PruneYard Shopping Center v. Robins*, 447 U.S. 74, 93-94 (1980) (Marshall, J. concurring) ("[T]here are limits on governmental authority to abolish `core' common-law rights.").

exclude the proprietors from their management." *Bogert v. City of Indianapolis*, 13 Ind. 134, 136, 138 (1859). The court commented that "the burial of the dead can [not] . . . be taken out of the hands of the relatives thereof" because "we lay down the proposition, that the bodies of the dead belong to the surviving relations, in the order of inheritance, as property, and that they have the right to dispose of them as such, within restrictions analogous to those by which the disposition of other property may be regulated." *Id.*

### iii.    Alternatively, Discovery Should be Completed before the Court Concludes Which Law Applies

Lastly, should the Court determine that a significant choice of law analysis is required, it would be improper to rule on the matter in response to the Government's motion. There are still issues of fact in dispute regarding the identity and location of the remains. The Court should allow for discovery to take place to ensure that both parties have a sufficient opportunity to support their factual positions. A ruling now would be premature.

### B.  The Government – Not the Imperial Japanese - Has Deprived the Families of Their Cognizable Interest by Refusing to Return the Remains

The Government does not dispute that it is preventing the Families from burying the remains that the Families claim are their relatives. Instead, the Government attempts to cast all of the blame on the Imperial Japanese. It claims that the Imperial Japanese, as a third-party, is who deprived the Families of their cognizable interest. This argument is another attempt to sidestep the issues of fact in dispute and ignores the actual relief that is being sought by the Families.

Here, the Imperial Japanese do not have possession of the service members' remains. On the other hand, the Government does have possession of the remains and refuses to allow the Families to provide a proper burial. It makes no sense for the Families to assert a claim against the Imperial Japanese. The present injury complained of is being caused by the Government's current

actions and/or inaction. Further, the Families' Due Process claims do not seek to impose a duty on the Government to go out and identify service members. This ignores the Families' claim that the Remains have been identified. Demanding the Government to stop depriving a recognized interest is not a request for assistance. It is a demand to stop violating constitutionally protected rights.

### C. The Families are Entitled to Reasonable Due Process, Which They Have Not Received

The Due Process Clause of the Fifth Amendment to the U.S. Constitution requires that the DPAA, as an administrative agency, provide the Families with a fair and impartial adjudicatory proceeding - both in appearance and in reality - that is free of any prejudgment on the key factual and legal merits of the allegations. *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1052 (5th Cir. 1997) ("The basic requirement of constitutional due process is a fair and impartial tribunal, whether at the hands of a court, an administrative agency or a government hearing officer."). In particular, procedural due process must be provided when potential fact issues exist concerning a specific individual. See *id.*

Here, the Government has not identified any sufficient proceedings whatsoever. While it mentions that individuals can submit information and make a request for disinterment, there is no requirement that the individual have the opportunity to be heard at meaningful time and in a meaningful manner. There is no reasonable opportunity to present a case to the agency. If the DPAA decides not to act, there is no opportunity to appeal a decision. Moreover, the claim that the DPAA provides "timely" relief is erroneous. It has been years since Private Kelder was disinterred, and the Government still refuses to return the balance of his remains to the next of kin. At bottom, the Government arbitrarily and capriciously decides whether to respond to a request from a family member. The complete lack of any meaningful hearing for family members to obtain the remains of their loved ones violates the Due Process clause. Next of kin must be given the

opportunity to be heard at a meaningful time and in a meaningful manner. Nonetheless, it is not proper for the Court to conclude the exact procedure that must be provided in response to a motion for judgment on the pleadings because of the necessary inquiry into evidence and facts.

Finally, while the Government lobs multiple attacks against the Families and their intentions, such attacks are misguided. The Families would like nothing more than to relieve the DPAA of the costs associated with disinterring their relatives' remains. They are more than willing to disinter the remains of their loved ones on their own and return them home for proper burial. It should be noted that the Government does not specify at all how the Families have reallocated resources or interfered with the DPAA's identification process. It is wrong to suggest that the DPAA's inability to efficiently and effectively disinter remains is a reason why these service members should not be brought home.[11] This is not a matter of prioritization. It is a matter of bringing these service members home.

### D. The Government Refuses to Return the Remains to Their Families Without Sufficient Justification

The Government argues that the Families' substantive due process claim fails because the deprivation of the Families' rights was not in an arbitrary and capricious manner.  The Government is refusing to allow a family to bury a relative that died fighting for the United States in World War II against the Imperial Japanese. The Government's motion does not pinpoint any justification for why it should not return identified remains. Indeed, assuming the Families' factual allegations are true, this is certainly official conduct that shocks the conscious. While the question of whether to disinter unknown remains may be debatable, whether to allow families to bury identified

---

[11] As stated in the Complaint, the DPAA has an approximately $112 million annual budget. In the 2016 fiscal year, the DPAA reportedly only made 164 identifications. This means that the DPAA spends approximately $680,000 per identification.

remains is not. Thus, the factual allegations, taken as true, together with all reasonable inferences in their favor, sufficiently allege a substantive violation of the Due Process Clause. *See Martin*, 2005 WL 2293797, at *7-8 (refusing to dismiss next of kin's substantive due process claim).

### IV.    Besides Violating the Due Process Clause, the Government Has Also Violated the Fourth Amendment

The interference with individual property rights may be found to breach more than one provision of the Constitution. *See Simi Inv. Co.. v. Harris County*, 236 F.3d 240, 248-49 (5th Cir. 2000). For example, a substantive due process or procedural due process claim "may be implicated simultaneously in various types of governmental actions that interfere with individual property rights," such as a constitutionally unreasonable seizure claim. *See Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009). That is the case here.

"A seizure of property . . . occurs when there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992). To sufficiently state a Fourth Amendment claim, the Families must assert that (a) there has been a meaningful interference with their property rights, which is (b) unreasonable or, if reasonable, then uncompensated. *Severance*, 566 F.3d at 501. Here, the Families asserted facts showing that there has been a meaningful interference with their property rights, which is unreasonable. Specifically, the Government has control of the remains of their relatives and are refusing to allow the Families to provide a proper burial. As discussed above, the Families do have a cognizable property interest, which is entitled to protection under the Constitution.

The Government does not dispute that a meaningful interference has been alleged. Instead, the Government argues that, if the Families do have a cognizable property interest, the Government's seizure is reasonable. "A determination of what was reasonable is difficult to make at this stage of the litigation." *Martin*, 2005 WL 2293797, at *8. The Government is essentially

asking the Court to declare that as a matter of law, any decision by the DPAA is per se reasonable. However, the factual allegations asserted by the Families show that the actions are unreasonable. Nonetheless, "[r]esolution of this dispute, and similar disputes regarding the reasonableness of the [Government's] behavior, would be inappropriate at this stage of the case." *Id.* Additionally, even if it were appropriate, the Government fails to provide any specific reason why the Government's seizure of identified remains is reasonable. Rather, the Government ignores the Families' claim that all of the remains have been identified. The Government also ignores that the balance of Pvt. Kelder's remains have already been disinterred and are currently being held in a government facility. Finally, the Government fails to argue that it is reasonable to seize identified remains. Consequently, this argument fails because it attacks a position not taken by the Families. The Families' factual allegations, taken as true, sufficiently allege unreasonableness. *See id.* at 7 ("parties have not pointed to a case that would prevent the [next of kin's] interest from receiving Fourth Amendment protection . . . .").

Therefore, the Families have sufficiently stated a claim for relief under the Fourth Amendment because there is not a justifiable reason for the Government's meaningful interference.

## V.   *Bivens* Action

The Families recognize that there is case law barring a *Bivens* claim against defendants in their official capacities. However, in *Eakin v. American Battle Monumnets Commission, et al.*, the court found that a complaint stated a cause of action where the plaintiff asserted a *Bivens* claim against government officials in their official capacity. No. SA-12-CA-1002-FB (W.D. Tex. Aug. 5, 2013). Understanding that this conflicts with other case law, the Families rely upon the facts alleged in their Amended Complaint to support their *Bivens* claim based on the holding in *Eakin*.

## VI.    The Families Sufficiently Stated a Claim for Relief under the First Amendment and the RFRA

The Religious Freedom Restoration Act of 1993 ("RFRA") prohibits the "Government [from] substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability" unless the Government "demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U. S. C. §§2000bb−1(a), (b). Thus, for purposes of sufficiently stating a claim, the Families must allege that the Government has substantially burdened their exercise of religion.

"Congress enacted RFRA in 1993 in order to provide very broad protection for religious liberty." *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2760, 189 L. Ed. 675 (2014). The exercise of religion "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." §2000cc−5(7)(A). "And Congress mandated that this concept 'be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution.'" *Burwell*, 134 S. Ct. at 2762 (quoting §2000cc−3(g)).

At issue here are regulations and policies promulgated by the Government, which place a substantial burden on the Families' exercise of religion by withholding the remains of the Families' relatives. The Families assert that they are entitled to bury their relatives' remains in accordance with their religious beliefs and moral principles. They have demonstrated that the Government has placed a substantial burden on their exercise of religion, which does not further a compelling

governmental interest.[12] Even if it did further a compelling interest, it is not the least restrictive means of furthering that interest.

### A. The Government's Refusal to Return the Remains of the Families' Relatives Places a Substantial Burden on Their Exercise of Religion

The facts alleged in the Complaint show that the Government has placed a substantial burden on the Families' exercise of religion. *See, e.g.*, *Snyder v. Holy Cross Hosp.*, 352 A.2d 334, 340 (Md. Ct. Spec. App. 1976) (holding that when a person has religious beliefs regarding the burial of a relative, the state may only abridge those practices by showing a compelling government interest because it is a substantial burden). Specifically, the Government is withholding the remains at issue from the Families, which denies them from burying their relatives in accordance with their sincere religious beliefs. This is the precise religious practice that is being substantially burdened. The Government does not appear to dispute that the Families have alleged that they have a sincere religious belief.

Contrary to the Government's contention, it is not necessary for the Families to specifically allege in their complaint that this religious exercise is compelled by, or central to, their religious beliefs. *See* §2000cc–5(7)(A). Likewise, it is not necessary for the Families to state in their complaint the exact details of when and how the remains will be buried in the future. Similarly, the Families do not have to put a label on their religious beliefs or "name" the specific religious

---

[12] Numerous commentators have noted that government interference with the right to bury a relative's remains may violate the Free Exercise Clause. *See* Walter R. Echo-Hawk, Tribal Efforts to Protect Against Mistreatment of Indian Dead: The Quest for Equal Protection of the Laws, NARF (1998), available at https://www.narf.org/nill/documents/nlr/nlr14-1.pdf ("Similarly, where state action is involved in the removal of remains or in withholding them from reburial by the affected Indian nearest next-of-kin, it seems clear that such interference with religious-based mortuary practices can create a cause of action under the Free Exercise Clause of the First Amendment.").

belief being burdened. The Government merely needs to have fair notice of the claim being asserted, which it does.

Additionally, the Government erroneously claims that the Families are attempting to force the Government to take an affirmative action to identify unknown remains. This confuses the causes of action that are being asserted against the Government.  It also ignores the factual claims in the Families' Amended Complaint stating that the remains have been identified and located. The Families want to take the affirmative action necessary to bury their relatives' remains – not force the Government to do so. Nowhere in the motion does the Government contend that refusing to return identified remains is not a substantial burden. Accordingly, the Families have sufficiently stated a claim for relief.

**B. The Government Improperly Raises an Affirmative Defense Not Stated in its Answer**

The Government attempts to assert the affirmative defense that its actions are in the furtherance of a compelling governmental interest and are the least restrict means of furthering that interest. This affirmative defense was not raised in the Government's Amended Answer. Thus, this argument should not be considered by the Court because the Government did not raise the defense in its pleadings and there is not fair notice.

**C. Even if the Affirmative Defense is Considered, the Government's Actions Are Not in Furtherance of a Compelling Governmental Interest**

The Government has failed to show that, as a matter of law, its actions are in the furtherance of a compelling governmental interest. The entire basis of the Government's affirmative defense is the factual claim that the some of the remains at issue have not been identified or located. Any comparison to the case concerning the World Trade Center is inappropriate. Unlike this case, there the remains had not been identified or specifically located. There were not temporary and specific

graves involved. Additionally, any blame on the Imperial Japanese is also inappropriate. The Imperial Japanese are not currently withholding the remains from their families.

Oddly, the Government claims that families of service members are owed less under the Constitution from the Government than other private citizens. Despite these service members sacrificing everything for their country, the Government now argues that their families should not be able to provide them a proper burial. No reason is offered as to why the remains should not be returned for burial when it is the DPAA's obligation to return identified remains to their families for burial. This undermines the entire argument. Thus, the Government has failed to meet its burden.

### D. Even if the Government Conclusively Showed that its Actions Are in the Furtherance of a Compelling Governmental Interest, it Failed to Allege that it is the Least Restrictive Means of Furthering that Interest

To defeat the Families' claim, the Government must establish, by way of affirmative defense, that it is using the least restrictive means of furthering the compelling governmental interest. Here, the Government has failed to establish this defense because it has not properly raised it. The Government does not even assert that it has met its burden. Instead, it incorrectly argues that the Families have not shown that the Government's procedures are more restrictive than necessary. The Families do not have to prove that. Nevertheless, no reason is given as to why identified remains that have been located should not be returned to their families for proper burial. Thus, the Government has failed to establish that it is using the least restrictive means.

In sum, the Families have properly stated a claim for relief under the RFRA. Additionally, for the same reasons stated above, the Families have properly stated a claim for relief under the Free Exercise Clause because the Government has not shown that the burden serves a legitimate governmental interest.

VII.   **The Families Have Sufficiently Stated a Claim for Relief under the Mandamus Act**

The Mandamus Act, 28 USC § 1361, provides for Unites States district court jurisdiction to compel an officer or employee of the Unites States or any agency thereof to perform a duty owed to the plaintiff when no other adequate legal remedy is available. Mandamus relief is available only if a plaintiff establishes (1) a clear right to relief, (2) that the defendant has a clear duty to act, and (3) no other adequate remedy exists. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 768 (5th Cir. 2011).

**A.  The Families Have a Clear Right to Relief and the Government Has a Clear Duty to Act**

The Families' Complaint alleges facts showing that they have a clear right to relief and that the Government has a clear duty to return the remains for proper burial. This is required by the Constitution and the Government's regulations, policies, and/or procedures.

**1.  A Duty to Act May Arise from a Constitutional Provision, Statute, Regulation, Policy, or Procedure**

Initially, the Government claims that any clear duty to act must arise explicitly from a statute. This argument fails. First, the duty may arise from the Constitution. Second, even if the Government does not have a clear duty to act under the Constitution or it is not explicitly stated in a federal statute, it has "been held that mandamus jurisdiction 'is properly invoked when it appears that a federal official may not have complied with the procedures promulgated to govern his conduct.' *Taylor v. U.S. Dept. of Labor*, 552 F. Supp. 728, 745 (E.D. Pa. 1982), aff'd, 725 F.2d 670 (3d Cir. 1983). Thus, "a violation of a governmental agency's own regulations can be the basis [for mandamus jurisdiction.]" *Andujar v. Weinberger*, 69 F.R.D. 690, 693–94 (S.D.N.Y.1976); *see also Ryan v. Shea,* 525 F.2d 268 (10th Cir. 1975); *Group Health Inc. v. Schweiker*, 549 F. Supp. 135, 140 (S.D. Fla. 1982); *McMahon v. Califano,* 476 F. Supp. 978, 982 (D. Mass. 1979).

The Fifth Circuit has added that "[i]t is now well established that . . . claims that the Army failed to follow its own regulations or failed to afford procedural due process are reviewable." *Woodard v. Marsh*, 658 F.2d 989, 992 (5th Cir. 1981). While generally federal courts will decline to review discretionary rulings of the military, where the military takes action against an individual, "and that action is governed by applicable regulations, the military must adhere to its own regulations in taking such action." *White v. Callaway*, 501 F.2d 672, 674 (5th Cir. 1974) (case concerning military's failure to follow own regulations). For example, the Fifth Circuit held that the Mandamus Act conferred jurisdiction over a suit for injunctive and declaratory relief from an action allegedly taken in violation of Army regulations. *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980). Accordingly, the Court may consider the Government's regulations, polices, and/or procedures when determining whether there is a clear duty to act.

### 2.   The Families Have a Clear Right to Relief

As stated throughout the pleadings, the Constitution, as well as core common law principles and agency regulations, provides the Families with the clear right to bury their relatives' remains. Accordingly, the Families have sufficiently stated a claim for relief, which shows that the Government has a clear duty to return the remains in its possession to the Families for proper burial.

### 3.   The Government's Regulations, Policies, and/or Procedures Require Action be Taken

"It is 'axiomatic,' however, 'that an agency is bound by its own regulations.'" *Nat'l Envtl. Dev. Assoc.'s Clean Air Project v. E.P.A.*, 752 F.3d 999, 1009 (D.C. Cir. 2014) (quoting *Panhandle Eastern Pipe Line Co. v. FERC*, 613 F.2d 1120, 1135 (D.C.Cir.1979) (holding that an agency does not have authority to "play fast and loose with its own regulations"). "Although it is within the power of [an] agency to amend or repeal its own regulations, [an] agency is not free to ignore or

violate its regulations while they remain in effect." *Id.* (citation omitted). Throughout the regulations, policies, and procedures referenced in the Complaint and in the Government's motion, there is one constant: remains will be returned to their families. The Government cannot ignore this.

One such regulation is Army Regulation 638-2, which requires that remains be returned to their families. This regulation alone is sufficient for the Families to state a claim for relief. For example, U.S. District Judge Fred Biery previously held that a complaint sufficiently stated a claim for relief when it relied upon Army Regulation 638-2 as a basis for mandamus in an almost identical case. *Eakin v. American Battle Monumnets Commission, et al.*. No. SA-12-CA-1002-FB (W.D. Tex. Aug. 5, 2013). This regulation, in addition to DoD Directives and publications cited in the Amended Complaint, requires that action be taken as requested by the Families.

The Government argues that this regulation is inapplicable despite the regulation specifically addressing the return of remains to their families and identification efforts. Also, this is a particularly odd argument given that it is a branch of the U.S. Army that receives requests for disinterment from families. Further, the U.S. Army Human Resources Command is the agency that has contacted the Families numerous times throughout this lawsuit trying to set up meetings. Also, most importantly, the Government does not contend that the Army Regulation conflicts with any DoD Directives. Indeed, the Army Regulation must comply with DoD policy and the law. The Government's argument that the Army has attempted to take control of a matter that is outside of its authority is misplaced.

The Government also contends that Joint Publication 4-06 has no application because Manila American Cemetery is not a location for temporary interment. This argument fails because the Government has admitted that it intends to disinter the allegedly unidentified remains located

there. Thus, it is a place of temporary interment. Finally, the Government claims that DoD directives do not impose a mandatory duty. However, the directives state that remains will be returned to their families. *See* DoD Directive 1300.22, Mortuary Affairs Policy § 3 (Oct. 30, 2015). The Government does not state with any specificity how there is any discretion involved with returning identified remains to their families. Likewise, the directives state that remains will be identified. Accordingly, the Families have sufficiently alleged that there is a clear duty to act.

### 4. The Government Improperly Attempts to Introduce Extrinsic Evidence

The Government attempts to introduce numerous documents that were not attached to the pleadings. As stated in the Government's motion, the Court "must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley*, 224 F.3d 496, 498 (5th Cir. 2009). Accordingly, the Families object to the consideration of any extrinsic evidence and/or documents presented by the Government in support of the motion.

### 5. The Government's Arguments are Inappropriate for A Rule !2(c) Motion

Additionally, most of the Government's arguments are inappropriate for a Rule 12(c) motion. The arguments attempt to dispute issues of fact, such as the identity and location of the remains, which necessarily requires the use of evidence. Here, all available evidence is not before the Court. Thus, such arguments must be dismissed.

### B. No other Adequate Remedy Exists

There is no other adequate remedy for the Families. First, there is no administrative remedy. The Families can submit information to the Government and ask for relief, but there is no opportunity for a fair and impartial hearing. The Families have submitted requests for disinterment multiple times over many years, yet the Government has not taken any significant action. There simply is no administrative remedy for the Families when the Government fails to act or violates

the Constitution in this situation. Likewise, there is no other judicial remedy. The Government argues that judicial review of a board's decision of whether someone is dead or not gives the Families an adequate remedy. This argument is nonsensical. There is no dispute that the service members are dead. Thus, the judicial review provision cited by the Government is inapplicable because it only applies to "missing persons." Accordingly, there is no other adequate remedy for the Families.

### C.  A Decision Based on Equitable Grounds is Improper for this Motion

The Government asks the Court to use its discretion to deny the Families' mandamus claims. This is not a proper argument for a motion for judgment on the pleadings because the Court is only considering whether a claim has been sufficiently made. Accordingly, the Court should deny the Government's request. Even if the request is considered, the Court should reject it. The Families have identified the location of their relatives' remains. The Government has not presented any evidence showing that returning the remains to their families will interfere with ongoing identification efforts. Additionally, despite the Government's contention, this Court is well positioned to consider the relevant evidence and determine the issues of fact that are still in dispute. Finally, equitable principles support the use of the Mandamus Act in this case. It would be unfair to deprive the Families of a ruling after more than seventy (70) years have passed since the service members died. Further, the Government would not be unfairly prejudiced by the Court's action, as it is the Government's purpose to work for the Families (and all other American citizens). Thus, this Court should not refuse to compel the mandatory duties owed to the Families.

### VIII.   The Families are Entitled to Relief Under the Administrative Procedure Act ("APA") – the MSPA Does Not Preclude Judicial Review

"In enacting the APA, Congress intended for those 'suffering legal wrong because of agency action' to have judicial recourse." *Texas v. United States*, 809 F.3d 134, 152 (5th Cir.

2015), *as revised* (Nov. 25, 2015) (citing 5 U.S.C. § 702). There is a strong, fundamental presumption in favor of judicial review of agency action. *Council for Urological Interests v. Sebelius*, 668 F.3d 704, 711 (D.C. Cir. 2011) (citing *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S. Ct. 2133, 90 L.Ed.2d 623 (1986)). Consequently, a court will "find an intent to preclude such review only if presented with 'clear and convincing evidence." *Texas*, 809 F.3d at 163. Judicial review will only be precluded when a statute's language or structure demonstrates that Congress wanted an agency to police its own conduct. *Id.*; *see* also *Block v. Community Nutrition Institute*, 467 U. S. 340, 345 (1984); *Abbott Labs. v. Gardner*, 387 U.S. 136, 140 (1967).

"Establishing unreviewability is a 'heavy burden' and 'where substantial doubt about the congressional intent exists, the general presumption favoring judicial review of administrative action is controlling.'" *Texas*, 809 F.3d at 164. In practice, "courts frequently interpret language that, on its face, seems explicitly to preclude review not to do so. Implicit preclusion is rare." STEPHEN G. BREYER ET AL., ADMINISTRATIVE LAW AND REGULATORY POLICY 986 (5th ed. 2002); *see also* JERRY L. MASHAW ET AL., ADMINISTRATIVE LAW: THE AMERICAN PUBLIC LAW SYSTEM 908 (6th ed. 2009) (observing that, "given judicial skepticism of preclusion in any form, implicit preclusion is a limited category reserved for rather special, verging on unique, circumstances.").

Nothing in the Missing Service Personnel Act ("MSPA") expressly precludes judicial review under the APA or otherwise. Likewise, nothing in the statutory scheme as a whole supports the conclusion that judicial review is precluded in this case. The single section of the MSPA that the Government contends precludes judicial review is 10 U.S.C. § 1508. This section expressly allows judicial review of findings by an agency that a "missing person" is dead or not dead. It

simply limits such judicial review of those findings to claims that there is new information that could affect the status of the missing person.  None of those actions are present. Here, the service members at issue are not "missing persons" under the statute's definition. The Government has already admitted that they are dead.

Additionally, this single section fails to imply that all other judicial review should be precluded. *See Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 63-64 (1993) (finding that a statute precluding district court review of an individual's immigration status did not preclude facial review of agency regulations).[13] "The suggestion that provision of such an action evidences a clear and convincing intent to exclude all other judicial relief, and in particular the right of aggrieved parties to challenge allegedly arbitrary and capricious actions by the [agency], borders on the incredible." *Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 807 (D.C. Cir. 1983); *see also Abbott Laboratories*, 387 U.S. at 141 (quoting L. JAFFE, JUDICIAL CONTROL OF ADMINISTRATIVE ACTION 357 (1965)) (" 'The mere fact that some acts are made reviewable should not suffice to support an implication of exclusion as to others. The right of review is too important to be excluded on such slender and indeterminate evidence of legislative intent.' "). Without any clear and convincing evidence, the Government's claim must fail.

---

[13] *See also Sharkey v. Quarantillo*, 541 F.3d 75, 85 (2d Cir. 2008) (reading a statute providing that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief under section . . . 1255 of this title" to nonetheless permit review of a decision revoking appellant's status as a lawful permanent resident under § 1255 (alterations in original) (quoting 8 U.S.C. § r252(a)(2)(B) (2012)) (internal quotation marks omitted)); *Buchanan v. Apfel*, 249 F3d 485, 488-go (6th Cir. 2001) (reviewing an agency decision notwithstanding a statute precluding review outside the statutorily prescribed channels); *Ry. Labor Execs. Ass'n v. Nat'l Mediation Bd.*, 29 F3d 655, 661-63 (D.C. Cir. 1994) (en banc) (reviewing an agency decision notwithstanding a Supreme Court decision holding that the statutory scheme precluded review)

The Government relies upon *Eakin v. American Battle Monumnets Commission, et al.*, where a court found that the MSPA precluded judicial review of a certain claim. No. SA-12-CA-1002-FB (W.D. Tex. Aug. 5, 2013). However, the court's holding is limited to the claim in that suit as it was currently pleaded. The APA claims that are pleaded in this suit are not the same as in *Eakin*. Nothing in the statutory scheme suggests that Congress intended to preclude the judicial review being sought. *See* K*irby Corp. v. Pena*, 109 F.3d 258, 263 (5th Cir. 1997) ("when Congress wishes to preclude judicial review, it usually says so in clear and unequivocal terms."). Thus, the strong presumption that judicial review is available has not been overcome. *See Gulf Restoration Network v. McCarthy*, 783 F.3d 227, 233 (5th Cir. 2015) (citing *Save the Bay, Inc. v. Adm'r. of E.P.A.*, 556 F.2d 1282, 1293 (5th Cir.1977) where the Fifth Circuit stated that "[a] long- standing and strong presumption exists that action taken by a federal agency is reviewable in federal court.").

### A. Specific Rules are in Place so that Judicial Review is Available

The Government also claims that judicial review is precluded because the challenged policies or practices are committed to agency discretion by law. "[T]he agency discretion clause 'is a very narrow exception' to the principle of judicial review of administrative action." *Gulf Restoration Network v. McCarthy*, 783 F.3d 227, 233 (5th Cir. 2015) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)). "It applies only 'in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Id.* "The mere fact that a statute grants broad discretion to an agency does not render the agency's decisions completely unreviewable under the committed to agency discretion by law exception unless the statutory scheme, taken together with other relevant materials provides absolutely no guidance as to how

that discretion is to be exercised." *Texas*, 809 F.3d at 168. (internal quotations omitted). "If there is a lack of statutory criteria, the agency's regulations can provide the requisite law to apply. *Inst. of Marine Mammal Studies v. Nat'l Marine Fisheries Serv.*, 23 F. Supp. 3d 705, 716 (S.D. Miss. 2014) (citing *Ellison v. Connor*, 153 F.3d 247, 254 (5th Cir. 1998) ("An agency's own regulations can provide the requisite 'law to apply'").

Here, there is a clear rule to apply, both under the Constitution and the Government's regulations, which is to return identified remains of service members to their families for proper burial. *See* Doc. 19 at 22-24. The Government discusses the discretion that it may apply when determining where to place the next recovery mission. Of course, the Government has discretion on how to perform recovery missions where it goes out to discover new remains not previously found. However, when remains have been kept for years and are identified, the Government has no discretion. Those remains must be returned to their families for proper burial. In sum, this narrow exception fails because there is a law and/or rule to apply.

## B. Even if the Government Has Discretion, Judicial Review is Still Available

"The United States Supreme Court has held that even if agency action is committed to its discretion by law, judicial review of constitutional claims is still available unless congressional intent to preclude review is clear." *Ellison*, 153 F.3d at 254 (citing *Webster v. Doe*, 486 U.S. 592, 603, 108 S. Ct. 2047, 2053, 100 L. Ed. 2d 632 (1988). Additionally, "[e]ven if the substance of an agency's decision is beyond review as discretionary, an agency's failure to follow its own regulations may be challenged under the APA." *Ellison*, 153 F.3d at 252. Here, the Families are alleging that the Government's actions and policies have violated their constitutional rights. Further, the Government's actions violate its own regulations as previously explained in this

response. Thus, even if the Government has discretion, judicial review is still available for the Families.

### C.  The Government's Action and/or Inaction May be Challenged

The Government claims that there has been no final agency action except in regards to John Patterson's claims. The APA authorizes suit by a person suffering legal wrong because of agency action. 5 U.S.C. § 702. "[A]gency action" is defined in § 551(13) to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or <u>failure to act</u>." (emphasis added). The APA provides relief for a failure to act in § 706(1): "The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." Thus, even if there is no final affirmative agency action, agency inaction may be sufficiently final to make judicial review appropriate. *Sierra Club v. Peterson*, 228 F.3d 559, 568 (5th Cir. 2000).

Here, the Government has taken final action by taking possession of the remains at issue and withholding them from the Families. For example, the Government has in its possession the balance of the remains of Pvt. Kelder. To the Families' best knowledge, they are currently being stored at a government facility. A disinterment request by his family would not provide any relief. The Government has taken final action. Even if this is not construed as final action, the Government has refused to return the remains to the Families for years. Such inaction violates the Constitution and the Government's own policies and regulations, which is reviewable.

### D.  The Government's Actions are Arbitrary and Contrary to the Law

The Government claims that the Families' APA claim fails on the merits. Whether or not the Families "can sustain their claims against [the Government] rests on factual determinations and therefore it is inappropriate to determine the validity of these claims at this stage in the litigation." *Douglass v. Williams*, No. A-11-CV-416 LY, 2012 WL 1884908, at *3 (W.D. Tex.

May 23, 2012).  It is clear that the Government understands the allegations, and whether the Families' claims have merit should not be resolved on a motion for judgment on the pleadings. *See id.* This is more appropriately decided in a motion for summary judgment. Here, there is an issue of fact concerning the identity of the remains. Thus, it would be improper for the Court to make a ruling on this matter under this motion.

Nonetheless, the Families have sufficiently stated a claim for relief. They have alleged specific facts showing that the Government has taken unlawful action that is also arbitrary and capricious. "Unlawful action" of course includes unconstitutional action. The Families allege violations of the Constitution with supporting facts. Further the Government does not challenge the Families' APA claim that the Government's conduct has deprived the Families of a fair and impartial hearing. Thus, the Families have sufficiently stated a claim for relief under the APA.

### IX.     The Families are Entitled to Declaratory Relief

The Government claims that the Declaratory Judgment Act claims should be denied because the underlying independent causes of action fail. As set forth in this response, each independent cause of action is sufficiently plead and should not be dismissed. Additionally, the Families have standing to assert their Declaratory Judgment Act claims because they have shown that they are suffering from actual present harm. The Government does not challenge the Families' assertion that declaratory relief is necessary in its motion.  Accordingly, the Court has jurisdiction to grant relief under the Declaratory Judgment Act.

As for the Families' request for reimbursement, the Families are not asserting this as an independent cause of action. Instead, it is requested as relief in conjunction with the Government's policies and regulations identified in the Complaint.

**CONCLUSION**

The Families understand that resolving this motion will require considerable time and resources. Knowing this, the Families believe that judicial economy will be best served by first ruling on the Families' pending motion to compel. The discovery requested in that motion will elicit the truth and promote justice. Therefore, the Families request that the Court decline to rule on this motion until the pending discovery dispute has been resolved. Nonetheless, the Court should deny the Government's motion.

Dated: May 17, 2018

Respectfully submitted,


/s/ John T. Smithee, Jr.

JOHN T. SMITHEE, JR. (*admitted pro hac vice*)
TX State Bar No. 24098449
TN State Bar No. 36211
LAW OFFICE OF JOHN TRUE SMITHEE, JR.
1600 McGavock St.
Suite 214
Nashville, TN 37203
(806) 206-6364
jts@smitheelaw.com



GENDRY & SPRAGUE, PC


RON A. SPRAGUE
TX State Bar No. 18962100
Gendry & Sprague, PC
900 Isom Road, Suite 300
San Antonio, TX 78216
Rsprague@gendrysprague.com
(210) 349-0511

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 17th day of May 2018, a true and correct copy was delivered as follows:

| | |
|---|---|
| **Galen Thorp**<br>U.S. Department of Justice<br>Civil Division, Federal Programs Branch<br>950 Pennsylvania Ave., NW<br>Washington, DC 20530<br>202−514−4781<br>Email: galen.thorp@usdoj.gov<br>ATTORNEY FOR DEFENDANTS | Via Electronic Delivery: **X**<br>Certified Mail, Return Receipt Requested:<br>United States Regular Mail:<br>Overnight Mail:<br>Via Facsimile Transmission:<br>Via Hand-Delivery: |
| **Mary F. Kruger**<br>United States Attorneys Office<br>601 NW Loop 410, Suite 600<br>San Antonio, TX 78216<br>210−384−7300<br>Fax: 210/384−7322<br>Email: mary.kruger@usdoj.gov<br>ATTORNEY FOR DEFENDANTS | Via Electronic Delivery: **X**<br>Certified Mail, Return Receipt Requested:<br>United States Regular Mail:<br>Overnight Mail:<br>Via Facsimile Transmission:<br>Via Hand-Delivery: |

/s/ John T. Smithee, Jr.
_____

John T. Smithee, Jr.