**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JOHN A. PATTERSON, et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action No. SA-17-CV-467-XR |
| | § | |
| DEFENSE POW/MIA ACCOUNTING | § | |
| AGENCY, et al., | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## ORDER

On this date, the Court considered Plaintiffs John A. Patterson, John Boyt, Janis Fort, Ruby Alsbury, Raymond Bruntmyer, Judy Hensley, and Douglas Kelder's (collectively "Plaintiffs") Motion to Compel (docket no. 28) and Defendants POW/MIA Accounting Agency ("DPAA"), Director of the DPAA Kelly McKeague, the United States Department of Defense ("DOD"), Secretary of Defense James Mattis, the American Battle Monuments Commission ("ABMC"), and acting Secretary of the ABMC Robert Delessandro's[1] (collectively "Defendants") Motion for Judgment on the Pleadings (docket no. 31). After careful consideration, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion for Judgment on the Pleadings and DENIES Plaintiffs' Motion to Compel.

## BACKGROUND

Plaintiffs filed their Original Petition on May 25, 2017. Docket no. 1. In a prior order, this Court granted Defendants' Motion to Dismiss and gave Plaintiffs leave to amend their complaint. Docket no. 14. Plaintiffs filed an Amended Complaint on January 4, 2018. Docket no.

---

[1] Each individually named defendant is being sued only in his or her official capacity. Docket no. 28.

19. Plaintiffs are the designated Primary Next of Kin ("PNOK") of Army service members who died in the Philippines serving their country in World War II. *Id.* Plaintiffs bring claims for substantive and procedural due process violations, a *Bivens* violation, a violation of the Administrative Procedures Act ("APA"), and violations of the Free Exercise Clause and Religious Freedom Restoration Act ("RFRA"). *Id.* The Plaintiffs further seek mandamus relief for recovery of the remains at issue, mandamus relief for identification of the remains and further efforts, a declaratory judgment finding Plaintiffs have a right to possess the remains, a declaratory judgment to return the remains to Plaintiffs, and a declaratory judgment finding that Defendants have violated Plaintiffs' First, Fourth, and Fifth Amendment rights. *Id.*

Plaintiffs' claims relate to their deceased family members whose remains went unidentified after World War II and who were buried as Unknowns in the Manila American Cemetery. *Id.* at 7–13. Plaintiffs seek the return of their family members' remains so that the families can secure what they believe is a proper burial. *Id.* at 2. Plaintiffs allege that, due to successful prior litigation to obtain government records pursuant to the Freedom of Information Act, "information has been brought to light that allows Plaintiffs to identify where these seven service members are currently buried." *Id.* at 8; *see also Eakin v. U.S. Department of Defense, et al.*, No. SA-10-CV-0748-FB. Plaintiffs allege that despite this new information, Defendants have refused to recover, return, or positively identify these remains. *Id.* at 8.

Plaintiffs identify seven separate remains, three of which are specifically designated by the United States government and four of which are identified by the communal grave in which they were originally buried: (1) X–1130, which Plaintiff John A. Patterson of Rhode Island alleges are the remains of his uncle First Lieutenant Alexander R. "Sandy" Nininger; (2) X–3629, which Plaintiff John Boyt of California alleges are the remains of his grandfather, Colonel

Loren P. Stewart; (3) X–618, which Plaintiff Janis Fort of California alleges are the remains of her uncle, Brigadier General Guy O. Fort; (4) remains from Cabanatuan Grave 822, which Plaintiff Ruby Alsbury of Texas alleges are the remains of her brother, Private Robert R. Morgan; (5) remains from Cabanatuan Grave 704, which Plaintiff Raymond Bruntmyer of Texas alleges are the remains of his brother, Private First Class Lloyd Bruntmyer; (6) remains from Cabanatuan Grave 407, which Plaintiff Judy Hensley of New Mexico alleges are the remains of her uncle Private First Class David Hansen; and (7) remains from Cabanatuan Grave 717, which Plaintiff Douglass Kelder of Wisconsin alleges are the remains of his uncle Private Arthur H. "Bud" Kelder. *Id.* at 7–13. Plaintiffs identify where the remains are currently buried or rest. *Id.* Defendants, in their answer, disagree that the remains have been positively located or identified according to DPAA standards. Docket no. 25 at 7–16.

Defendants aver that the DPAA is currently processing requests to disinter grave X-3629 (alleged by Plaintiffs to contain the remains of Colonel Stewart) and grave Leyte #1 X-618 (alleged by Plaintiffs to contain the remains of Brigadier General Fort). *Id.* at 10, 11. Additionally, Plaintiffs allege that the DPAA has recommended the disinterment of Cabanatuan Grave 822 (alleged by Plaintiffs to contain the remains of Private Morgan) and Cabanatuan Grave 704 (alleged by Plaintiffs to contain the remains of Private First Class Bruntmyer), but that the recommendations have not been finalized and are currently under review by the Assistant Secretary of Defense for Manpower and Reserve Affairs. *Id.* at 12; Docket no. 31 at 18. The DPAA affirmatively denied a request to disinter grave X-1130, alleged by Plaintiffs to contain the remains of First Lieutenant Nininger. Docket 25-3 at 38.

Plaintiffs filed a Motion to Compel Production of Remains or, in the Alternative, for Physical Examination on April 13, 2018. Docket no. 28. They seek to disinter certain graves in

the Manila American Cemetery for DNA testing as part of the discovery process for this action. *Id.* at 2–3. Defendants refused Plaintiffs' initial request for production and now oppose the Motion to Compel on the grounds that Plaintiffs' Motion fails to overcome a presumption against disinterment, exceeds Rule 26(b)(1)'s limitations on discovery, and fails to meet Rule 35's requirements of real controversy and good cause. Docket no. 34. Defendants filed a Motion for Judgment on the Pleadings on April 20, 2018, arguing that each of Plaintiffs' claims fail as a matter of law. Docket no. 31.

## ANALYSIS

### I.      Motion for Judgment on the Pleadings

#### A.  Legal Standard

"The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232, 237 (5th Cir. 2007) (citing *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004)); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (adopting the same standard after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim for relief must contain (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." Fed. R. Civ. P. 8(a). In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed favorably to the plaintiff. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). To survive a 12(b)(6) motion,

a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Judgment on the pleadings is only appropriate when "the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2009).

### B. Due Process Violations

"No person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause embodies two distinct concepts: procedural due process and substantive due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). Procedural due process requires the government to follow appropriate procedures before it deprives a person of an interest in life, liberty, or property; substantive due process ensures that, regardless of the fairness of the procedures used, the government does not use its power for oppressive purposes. *Daniels v. Williams*, 474 U.S. 327, 331 (1986). In other words, "[p]rocedural due process guarantees that a state proceeding which results in a deprivation of property is fair, while substantive due process ensures that such state action is not arbitrary and capricious." *Licari v. Ferruzzi*, 22 F.3d 344, 347 (1st Cir. 1994) (citing *Amsden v. Moran*, 904 F.2d 748, 753–54 (1st Cir. 1990), *cert. denied*, 498 U.S. 1041 (1991)).

When Due Process is invoked in a novel context, the court first determines the exact nature of the private interest that is threatened. *Lehr v. Robertson*, 463 U.S. 248, 256 (1983). To prevail on a substantive due process claim, a plaintiff must establish that he or she holds a constitutionally protected property right to which Due Process protections apply. *Simi Inv. Co. v.*

*Harris Cty., Tex.*, 236 F.3d 240, 249 (5th Cir. 2000). "Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

### i. Property Interest in Remains

The crux of Plaintiffs' case is whether they have a protected property interest in their deceased veteran family members' remains. The question is complicated by the fact that the remains have not yet been positively identified by the government using DNA testing, which cannot happen until the remains are disinterred. Through circumstantial evidence, however, Plaintiffs have indicated which unknown graves are allegedly the current resting locations of each deceased service member.

The Fifth Circuit has found that where a state law creates a "quasi-property" interest in remains, that interest may be subject to constitutional due process protections. *See Arnaud v. Odom*, 870 F.2d 304, 308 (5th Cir. 1989) (applying Louisiana law to determine the quasi-property interest). Plaintiffs have pointed to a case from each state in which an individual plaintiff resides that recognizes a quasi-property interest in the remains of a deceased relative for the purposes of burial. *See Shelley v. Cty. of San Joaquin*, 996 F. Supp. 2d 921, 927 (E.D. Cal. 2014) (recognizing quasi-property right in remains for limited purpose of determining burial, but specifically holding that relatives have no general property interests subject to due process protections in the remains of their deceased family members); *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 383 (Tex. 2012) (acknowledging a longstanding recognition by Texas courts of a quasi-property interest in remains to direct burial); *Matter of Johnson*, 612 P.2d

1302, 1305 (N.M. 1980) (recognizing that a quasi-property right in the remains of a deceased relative may require that some due process protections be afforded to the relative in whom the interest vests); *Sullivan v. Catholic Cemeteries, Inc.*, 317 A.2d 430, 432 (R.I. 1974) (acknowledging that remains are not property in the true sense of the term, but quasi-property "to which are attached certain rights," like burial, which nonetheless diminish once the body is laid to rest); *Koerber v. Patek*, 102 N.W. 40, 43 (Wis. 1905) (finding that, while a corpse is not property in the ordinary sense, a relative of the deceased does have a right to possession for burial).

Defendants argue that, despite the quasi-property rights recognized by some state courts, the remains at issue in this case are different because they are unidentified and are currently "buried respectfully at a military commemorative cemetery." Docket no. 31 at 24–25. Defendants argue that Plaintiffs fail to establish a property interest in this case. Plaintiffs allege that the remains have been identified based on circumstantial, contemporary evidence from wartime records. Although quasi-property rights recognized by some states may be limited with respect to burial of remains and a family member's interest may diminish after burial, the Court finds that, at this stage, Plaintiffs at least sufficiently allege a quasi-property interest in the right to burial for their family members' remains.

### ii.  Substantive Due Process

Courts have described the proverbial "line" which, if crossed, constitutes a substantive due process violation differently. Action that substantively violates a protected right has alternately been described as action that is "shocking or violative of universal standards of decency," *Furtado v. Bishop*, 604 F.2d 80, 95 (1st Cir. 1979), "arbitrary or capricious," *Simi*, 236 F.3d at 249, or counter to "the concept of ordered liberty," *Palko v. State of Connecticut*, 302

U.S. 319, 325 (1937). The Fifth Circuit has found that, when examining whether a policy that obstructs a property interest is rationally related to a legitimate government interest, "[i]f the question is at least debatable, there is no substantive due process violation." *Simi*, 236 F.3d at 251 (5th Cir. 2000).

Defendants argue that Plaintiffs cannot show that Defendants' actions were arbitrary or capricious because Plaintiffs cannot show that the government made decisions "without a rational connection between the known facts and the decision or between the found facts and the evidence." Docket no. 31 at 34 (citing *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999) (dealing specifically with the standard of review for an action brought under the Employee Retirement Income Security Act of 1974)). Defendants argue that decisions over identification efforts must be made with limited resources and thousands of unidentified subjects in mind. *Id.* Defendants reason that their structured thresholds for disinterment are an appropriate basis for deciding not to disinter these particular remains at this particular time. *Id.*

Plaintiffs allege that the government's refusal to return allegedly identified remains to the appropriate families for burial "shocks the conscience." Docket no. 33 at 19. Plaintiffs argue that their allegations that the remains are in fact identified, taken as true, render Defendants' withholding of the remains a substantive due process violation. *Id.* at 19–20. At this stage, the Court finds that Plaintiffs sufficiently allege a substantive due process violation.

### iii.  Procedural Due Process

"[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Loudermill*, 470 U.S. at 541. Before the government deprives an individual of a property interest,

the individual must receive notice and an opportunity to be heard. *Id.* at 542. A court weighs three factors in determining whether the procedures employed were adequate: (1) the private interest at stake, (2) the risk of erroneous deprivation and the probable value of additional procedure, and (3) the government interest at stake. *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976). Here, Plaintiffs allege that Defendants have failed "to even offer any proceedings whatsoever." Docket no. 19 at 18. Throughout their amended complaint, Plaintiffs allege that Defendants have inadequate procedures for families to claim unidentified remains or request exhumation. The Court recognizes the government has an interest in responding to requests based on its limited resources. But given Plaintiffs' private interests regarding their family members' remains and the alleged erroneous deprivation of an opportunity to be heard, the Court finds that, at this stage, Plaintiffs sufficiently allege a procedural due process violation that will benefit from further fact development.

### C. *Bivens* Violation

The Supreme Court has recognized a private cause of action against federal officials who, acting under color of federal law, violate a constitutional right of an individual. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics.* 403 U.S. 388 (1971). *Bivens* "provides a cause of action only against government officers in their individual capacities." *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999). Here, Plaintiffs specifically state in their complaint that they are suing each individually-named Defendant in that person's *official* capacity only. Docket no. 19 at 2, n.2. Thus, Plaintiffs' *Bivens* claims fail as a matter of law.

### D. Violation of the Administrative Procedures Act ("APA")

"A federal court has no subject matter jurisdiction over claims against the United States unless the government waives its sovereign immunity and consents to suit." *Rothe Dev., Inc. v. U.S. Dep't of Def.*, 666 F.3d 336, 338 (5th Cir. 2011) (quoting *Danos v. Jones*, 652 F.3d 577, 582 (5th Cir. 2011)). The APA waives sovereign immunity for judicial review of agency action to the extent a party "adversely affected . . . by agency action" seeks "relief other than money damages." *Id.* (quoting 5 U.S.C. § 702). The APA provides for judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Immunity is waived except where (1) "statutes preclude judicial review" or (2) "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

Congress intended to make agency action "presumptively reviewable." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012). This presumption can be overcome by "'specific language or specific legislative history that is a reliable indicator of congressional intent,' or a specific congressional intent to preclude judicial review that is ''fairly discernible' in the detail of the legislative scheme.'" *Bowen v. Michigan Acad. of Family Physicians*, 476 U.S. 667, 673 (1986) (quoting *Block v. Community Nutrition Institute*, 467 U.S. 340, 349, 351 (1984)). Where a statute does not expressly preclude review under the APA, the statutory scheme as a whole may be considered to determine whether preclusion of review is implied. *Sackett v. E.P.A.*, 566 U.S. 120, 128 (2012). Preclusion can be implied "from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." *Block*, 467 U.S. at 345. Still, "preclusion of judicial review of administrative action adjudicating private rights is not lightly to be inferred."

*Barlow v. Collins*, 397 U.S. 159, 166 (1970). In fact, "judicial review of such administrative action is the rule, and nonreviewability an exception which must be demonstrated." *Id.*

Defendants attempt to overcome the presumption of reviewability by pointing to a statute that they allege precludes judicial review of the government's decision not to disinter the remains. The Missing Service Member Personnel Act ("MSPA") creates two instances in which judicial review of a finding regarding a missing person may be sought by a PNOK. First, a finding "that a missing person is dead" is reviewable. 10 U.S.C. § 1508; *see also* 10 U.S.C. §§ 1504, 1505. Second, a PNOK may seek review of a finding "that confirms that a missing person formerly declared dead is in fact dead." 10 U.S.C. § 1508; *see also* 10 U.S.C. § 1509. PNOKs may seek review of these two findings when "there is information that could affect the status of the missing person's case that was not adequately considered during the administrative review process under [the MSPA]." 10 U.S.C. § 1508.

Defendants argue that because the MSPA specifically permits review of those two decisions, any other type of decision made pursuant to the MSPA is impliedly nonreviewable under the APA. They rely on an order from a court in this district which concluded, based on a similar claim, that the MSPA "provides for judicial review only for . . . specified decisions, impliedly forbidding the review [sought] under the APA." Docket no. 31 at 50–51 (quoting *Eakin v. Am. Battle Monuments Comm'n*, No. SA-12-CA-1002-FB (Aug. 5, 2013)).

Plaintiffs point to a number of cases that take a different approach. In *Abbott Laboratories v. Gardner*, the Supreme Court held that the presence of statutory provisions allowing review of some regulations but not others did not mean that the review of the others was barred; in fact, the statutory scheme as a whole in that instance lent itself to allowing review of all regulations, not just the enumerated ones, because the legislative intent behind specifying

causes of action seemed to be to provide *additional* relief to standard means. *Abbott Labs. v. Gardner*, 387 U.S. 136, 141 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) ("The mere fact that some acts are made reviewable should not suffice to support an implication of exclusion as to others. The right to review is too important to be excluded on such slender and indeterminate evidence of legislative intent."); *see also Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 63–64 (finding that an exclusive statutory scheme for review of an immigration status determination did not preclude review of agency regulations). Other courts have taken similar approaches. For example, the D.C. Circuit has held that a statute that allows for judicial review of some types of agency action does not necessarily mean that other agency action not specified in statute is nonreviewable. *Int'l Ladies' Garment Workers' Union v. Donovan*, 722 F.2d 795, 807 (D.C. Cir. 1983). The court held "[t]he suggestion that provision of such an action evidences a clear and convincing intent to exclude all other judicial relief, and in particular the right of aggrieved parties to challenge allegedly arbitrary and capricious actions by the [agency], borders on the incredible." *Id.*

Defendants alternately argue that judicial review under the APA is precluded here because the accounting mission operations are left to agency discretion. Docket no. 31 at 53. The APA's prohibition of judicial review where agency action is committed to agency discretion is only "applicable in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)). This exception to review applies "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). "An agency's own regulations can provide the requisite 'law to apply.'"

*Ellison v. Connor*, 153 F.3d 247, 251 (5th Cir. 1998) (quoting *McAlpine v. United States*, 112 F.3d 1429, 1434 (10th Cir.1997)).

The Supreme Court has identified some relevant factors when evaluating an agency's exercise of discretion and reviewability. *See Heckler*, 470 U.S. at 831; *see also Lincoln v. Vigil*, 508 U.S. 182, 193 (1993). Where agency action requires "a complicated balancing of a number of factors which are peculiarly within its expertise" to determine if its "resources are best spent" on one program or another, whether it "is likely to succeed" in fulfilling a statutory mandate, whether a particular program "best fits the agency's overall policies," and "whether the agency has enough resources" to fund a program "at all," the agency's discretion may be nonreviewable. *Lincoln*, 508 U.S. at 193 (quoting *Heckler*, 470 U.S. at 831). In explaining why an agency's decision not to enforce a regulation in a particular case was nonreviewable, the Supreme Court pointed out that "when an agency refuses to act it generally does not exercise its coercive power over an individual's liberty or property rights, and thus does not infringe upon areas that courts often are called upon to protect." *Heckler*, 470 U.S. at 832 (emphasis omitted).

Even after a determination that an action was committed to agency discretion is made, judicial review still may be available. For example, where the law does create a judicially manageable standard by which to judge an agency's actions, agency action can still be reviewed for abuse of the discretion the agency was granted. *Heckler*, 470 U.S. at 830; see also 5 U.S.C. § 706(2)(A). Further, "[e]ven if the substance of an agency's decision is beyond review as discretionary, an agency's failure to follow its own regulations may be challenged under the APA." *Ellison v. Connor*, 153 F.3d at 252. Additionally, "even if agency action is committed to its discretion by law, judicial review of *constitutional* claims is still available unless

congressional intent to preclude review is clear." *Id.* at 254 (citing *Webster v. Doe*, 486 U.S. 592, 603 (1988)) (emphasis added).

Here, the Court finds that although MSPA allows for review of some specific decisions, this does not preclude the review of other Department of Defense decisions. The review Plaintiffs seek is not explicitly identified by MSPA, but based on the case law discussed above, the Court does not find the statutory language sufficient to support the implication that the type of review Plaintiffs seek here is excluded. Also, to the extent that the decision to disinter or not is left to agency discretion, the DPAA has detailed policies for how to conduct its accounting mission, which provide the Court sufficient standards by which to evaluate the DPAA's action. *See* DPAA Administrative Instruction No. 2310.01; Docket no. 31-1 at 164–91. Further, at this stage the Court finds that APA review is available for Plaintiffs' First, Fourth, and Fifth Amendment constitutional claims because the Court finds no indication that Congress intended to preclude review of constitutional claims. *See Webster*, 486 U.S. at 603.

After a claim surpasses the initial hurdle of whether judicial review is precluded by statute or agency discretion, then a plaintiff must point to the "final agency action" they wish to challenge "for which there is no other adequate remedy." 5 U.S.C. § 704. "Failure to act" is an "agency action" under the APA. 5 U.S.C. § 551(13). Agency action must meet two conditions to be final: (1) "the action must mark the 'consummation' of the agency's decisionmaking process" and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 287 (5th Cir. 1999) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). "In certain circumstances, agency inaction may be sufficiently final to make judicial review appropriate." *Sierra Club v. Peterson*, 228 F.3d 559, 568 (5th Cir. 2000).

Defendants argue that Plaintiffs did not point to "specific actions" that demonstrated Defendants' alleged failure to act. Docket no. 31 at 55. In *Sierra Club*, however, the Fifth Circuit reviewed agency action where "the action of failing to comply with the [agency's own regulations] ha[d] occurred." *Sierra Club v. Peterson*, 185 F.3d 349, 364 (5th Cir. 1999), *on reh'g*, 228 F.3d 559 (5th Cir. 2000). Here, Plaintiffs allege that the government violated many of its own directives and regulations to recover, identify, and return remains. *See, e.g.*, U.S. Army Regulation 638-2; U.S. Army Field Manual FM 4-20-65 (FM 10-286); DoD Directive 1300.22; DoD Directive 2310.07E. At this stage, the Court finds that Plaintiffs sufficiently allege a violation of the APA based on Defendants' alleged inaction as final agency action that is reviewable.

### E. Violation of the Free Exercise Clause and Religious Freedom Restoration Act

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. To invoke First Amendment protections, a plaintiff must plead he has a "sincerely held religious belief." *Frazee v. Illinois Dep't of Employment Sec.*, 489 U.S. 829, 834 (1989). "After demonstrating that he possesses a 'sincerely held religious belief,' a plaintiff must prove that a government regulation substantially burdens that belief." *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 701 F. Supp. 2d 863, 876 (S.D. Tex. 2009), *aff'd*, 611 F.3d 248 (5th Cir. 2010).

Under RFRA, "[g]overnment may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b). RFRA was enacted "to provide

greater protection for religious exercise than is available under the First Amendment." *Holt v. Hobbs*, 135 S. Ct. 853, 859–60 (2015).

Plaintiffs allege that Defendants have impeded their ability to freely practice their religious tradition of providing a proper burial for their deceased loved ones by failing to return their remains. Docket no. 19 at 32–33. Defendants first argue that Plaintiffs lack standing to bring a Free Exercise claim on behalf of their deceased family members. Docket no. 31 at 36. "To have Article III standing to pursue an alleged violation of the Free Exercise Clause, a plaintiff must allege that his or her own 'particular religious freedoms are infringed.'" *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 292 n.25 (5th Cir. 2001) (citing *Sch. Dist. of Abington v. Schempp*, 374 U.S. 203, 224 n.9 (1963)). Plaintiffs allege that government action "deprives Plaintiffs, and their deceased family members, from having a proper burial in accordance with each respective families' religious beliefs." Docket no. 19 at 32. Plaintiffs specifically allege that the religious practice being burdened is that of the Plaintiffs—the living family members—to bury their deceased family members. Docket no. 19 at 32–33. The Court finds Plaintiffs have standing to bring Free Exercise claims based on their own religious beliefs.

Defendants also argue that Plaintiffs fail to properly allege a burden to their religious practices and, even if they did, the government is acting according to a compelling interest using the least-restrictive means. *Id.* at 37–42. Plaintiffs allege that their free exercise of their sincerely held religious tradition of burial has been burdened because the government refuses to return the remains of their relatives. Docket no. 19 at 32–33. These allegations are plausible on their face and meet the pleading requirements at this stage of litigation for both a Free Exercise claim and a RFRA claim. Plaintiffs state a valid claim for violation of the Free Exercise Clause and RFRA.

### F. Mandamus Relief

Plaintiffs seek mandamus relief for a recovery of remains and for identification of remains and further efforts. Under the Mandamus Act, "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus relief is available only if a plaintiff establishes (1) a clear right to relief, (2) that the defendant has a clear duty to act, and (3) no other adequate remedy exists. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 768 (5th Cir. 2011). Mandamus is an "extraordinary remedy" and it is used "only to compel the performance of a clear nondiscretionary duty." *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988).

To show that Defendants have a clear duty to act, Plaintiffs "must demonstrate that a government officer owes [Plaintiffs] a legal duty that is a specific, ministerial act, devoid of the exercise of judgment or discretion." *Dunn–McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997). "The legal duty must be set out in the Constitution or by statute and its performance must be positively commanded and so plainly prescribed as to be free from doubt." *Id.* (citation omitted).

Plaintiffs allege that multiple military regulations and policies create a duty to return remains to family members of the deceased. Docket no. 19 at 20–21 (citing Department of Defense Directive Number 1300.22, Mortuary Affairs Policy (Oct. 30, 2015); Chairmen of the Joint Chiefs of Staff, Joint Publication 4-06 Mortuary Affairs (Oct. 12, 2011), ¶¶ 1-2d, 2e; Army Regulation 638-2). Plaintiffs point to numerous other military regulations and policies as a basis for their seeking mandamus relief for identification of remains. *Id.* at 22–24.

But as this Court found with Plaintiffs' Original Complaint, in their Amended Complaint Plaintiffs fail to establish a specific, ministerial act, devoid of the exercise of judgment or

discretion on which to base a claim for mandamus relief against Defendants. Plaintiffs do not attempt to seek mandamus relief under 10 U.S.C. §§ 1501-1513, as before, but the regulations they point to here do not establish a nondiscretionary duty. To show that Defendants have a clear duty to act, Plaintiffs "must demonstrate that a government officer owes [Plaintiffs] a legal duty that is a specific, ministerial act, devoid of the exercise of judgment or discretion." *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1288 (5th Cir. 1997). "The legal duty must be set out in the Constitution or by statute and its performance must be positively commanded and so plainly prescribed as to be free from doubt." *Id.* (citation omitted). Further, the regulations and policies that Plaintiffs identify do not set out specific nondiscretionary duties to which Defendants must adhere; they inherently involve discretion, just as the Court found is true for the underlying statute (10 U.S.C. §§ 1501-1513). For example, DoD Directive 1300.22 identifies the need to balance the recovery and identification with "maintaining the dignity, respect and care of the deceased" and "protecting the safety of the living." DoD Directive 1300.22 § 3. Plaintiffs fail to demonstrate that Defendants' responsibilities with respect to recovery and identification of remains are specific, ministerial acts, devoid of the exercise of judgment or discretion. Thus, the Court finds that Plaintiffs fail to state a valid claim for mandamus relief.

### G. Plaintiffs' Request for Declaratory Judgment

Plaintiffs seek a declaration that they have the right to possess the remains of their deceased loved ones and have those remains returned to them. They also seek a declaration that Defendants violated their First, Fourth, and Fifth Amendment rights.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may

declare the rights and other legal relations of any interested party seeking such declarations, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citing *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). Consequently, "the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Id.* A "case of actual controversy" refers to the type of "Cases" and "Controversies" that are justiciable under Article III. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). As applied to the Declaratory Judgment Act, Article III requires that a dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* (internal quotation marks omitted). A court may not enter an advisory opinion on a hypothetical set of facts. *Id.* "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127.

Plaintiffs rely on their statutory claims, identification of certain federal regulations and policies, and request for mandamus relief as the basis for seeking a declaratory judgment. Docket no. 19 at 26–30. Defendants argue that this Court lacks jurisdiction to grant relief pursuant to the Plaintiffs' Declaratory Judgment Act claims. Defendants argue "Plaintiffs must bring a valid claim for an independent cause of action that provides the Court with subject matter jurisdiction." Docket no. 31 at 57. Defendants argue that because the independent actions which could potentially confer jurisdiction here—claims pursuant to *Bivens*, the Mandamus Act, and

the APA—must all be dismissed, the Court has no jurisdiction over a declaratory judgment claim.

As discussed above, the Court has found that Plaintiffs fail to state a valid *Bivens* claims and any valid claims for mandamus relief. The Court, however, has found that Plaintiffs' claims for violations of the APA survive at this time. Thus, the Court finds that Plaintiffs have alleged an independent cause of action which confers jurisdiction on this Court to grant declaratory relief.

Plaintiffs also seek a declaratory judgment based on alleged violations of their First, Fourth, and Fifth Amendment rights. As discussed above, Plaintiffs state valid claims for violations of their First and Fifth Amendment rights. The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "[A] seizure deprives the individual of dominion over his or her person or property." *Horton v. California*, 496 U.S. 128, 133 (1990). Further, a seizure involving property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992).

Defendants argue that the Plaintiffs' Fourth Amendment claim fails because Plaintiffs do not have a property interest in the remains in question. Whether Defendants unreasonably seized Plaintiffs' property relies, at this pleading stage, on whether Plaintiffs have a cognizable property interest in the remains. As discussed above, because the Fifth Circuit has recognized that state law can create quasi-property interests in remains which are afforded constitutional protections, *see Arnaud*, 870 F.2d at 308, the Court finds that Plaintiffs adequately allege a Fourth Amendment controversy subject to adjudication by declaratory judgment. Thus, the Court finds

Plaintiffs have alleged constitutional violations for which Plaintiffs, at this stage, may seek declaratory relief.

## II.     Motion to Compel Production of Remains

In the request for production at issue here, Plaintiffs sought to have Defendants disinter about two dozen sets of remains for DNA testing and produce fourteen other sets of remains associated with Cabanatuan grave 717 currently being held in storage, a group of remains alleged to contain the balance of the remains of Private Kelder. Docket no. 28 at 3; Docket no. 28-1 at 5–6. Defendants denied the request, objecting on the grounds that the Court lacks jurisdiction to order Defendants to disinter the graves at issue and that the request is vague, exceeds the scope of the Federal Rules, is unreasonable and disproportionate to the needs of the case, and would place sensitive third-party information in Plaintiffs' control. Docket no. 28-2 at 46-49.

Plaintiffs filed a motion to compel production of remains or, in the alternative, for physical examination of the remains pursuant to Federal Rules of Civil Procedure 34, 35, and 37. Docket no. 28. Plaintiffs request that the Court give Defendants no more than sixty days to disinter and produce the remains to Plaintiffs, and order that examination and DNA testing will be completed within forty-five days. *Id.* at 12. Plaintiffs request that the remains be produced at a U.S. military base or facility located within 30 miles of San Antonio, Texas. *Id.* Alternatively, Plaintiffs request that the Court issue an appropriate schedule providing deadlines for when certain remains must be produced and examinations performed.

In the alternative to their motion to compel production, Plaintiffs ask the Court to order a physical examination per Rule 35(a). Docket no. 28 at 10. Plaintiffs also filed a supplement detailing a proposal that, if needed, they could implement to accomplish the requested disinterment and DNA testing without government aid. Docket no. 40. In this advisory, Plaintiffs

state they are prepared to perform each action required through agreements made with the PFC Lawrence Gordon Foundation, Kenyon International Emergency Services, and Bode Cellmark Forensics. *Id.*

### A. Plaintiffs' Arguments Supporting an Order to Compel

#### a. Rule 34 and Common-law Discovery Principles

In their Motion to Compel, Plaintiffs seek the disinterment, production, and DNA testing of the remains at issue under Rule 34. Under Rule 34, a party may request that the opposing party "produce and permit the requesting party . . . to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control: . . . any designated tangible things[.]" FED. R. CIV. P. 34(a)(1)(B). If "a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34," the requesting party may move under Rule 37 for an "order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3)(B)(iv). A party that opposes the Rule 34 request must "state with specificity the grounds for objecting to the request, including the reasons." *Id*. 34(a)(2)(B); *Walters v. Sentry Link, LLC*, No. 16-383, 2018 WL 837611, at *3 (W.D. Tex. Feb. 9, 2018) ("The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable.") (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)).

Plaintiffs argue that Rule 34 is broad enough to encompass orders for exhumation, autopsy, and postmortem DNA testing, when appropriate under the circumstances. Docket no. 28 at 7-8 (citing, e.g. *Zalatuka v. Metropolitan Life Ins. Co*., 108 F.2d 405 (7th Cir. 1939); 7 Moore's Federal Practice, § 34.12 (Matthew Bender 3d ed. 2017) ("Given the use of the broad term 'tangible thing,' in Rule 34, it is difficult to imagine anything that could not be required to

be produced under appropriate circumstances. For example, a dead body has been held to be subject to an order for production.")).

Indeed, pointing to cases in which courts have condoned disinterment to resolve civil litigation, Plaintiffs argue that courts have consistently allowed disinterment for discovery purposes. The Fifth Circuit has found that where state law permits exhumation for resolution of criminal cases, exhumation could be appropriate to promote justice in civil matters. *Travelers Ins. Co. v. Welch*, 82 F.2d 799, 801 (5th Cir. 1936) (finding such in light of a Louisiana law that permitted disinterment of remains for evidentiary purposes in criminal proceedings); *see also Stephens v. Nat'l Gypsum Co.*, 685 F. Supp. 847, 847–48 (M.D. Ga. 1988) (adopting the reasoning in *Travelers* because, despite the reliance on Louisiana law to reach its conclusion, the court's reasoning was a generally applicable "accurate statement of the law"). Other courts have considered factors such as a showing of good cause, urgent necessity, and a showing that disinterment will establish the facts sought to allow for disinterment. *Stephens*, 685 F. Supp.at 847–48; *see also Brewer v. Am. Med. Alert Corp.*, No. 1:08-0069, 2010 WL 280986, at *6 (M.D. Tenn. Jan. 20, 2010) (granting a motion to disinter where the movant showed that disinterment would definitively prove the deceased's cause of death); *Labiche v. Certain Ins. Companies or Underwriters at Lloyd's, London, England*, 196 F. Supp. 102, 105 (E.D. La. 1961) (finding "where the interests of justice appear to require it, exhumation should be ordered").

Plaintiffs argue that the facts of this case make an order for disinterment under Rule 34 appropriate. Additionally, Plaintiffs argue that common-law discovery principles support the Court's ability to grant this motion. Docket no. 28 at 7. Plaintiffs argue the families are entitled to production of the remains under common-law principles because there is good cause for production, production is necessary, and production will establish facts at issue in the quickest,

most efficient way. *Id*. The facts essential to this case can be resolved by family-conducted DNA tests in weeks, Plaintiffs argue, while DPAA-conducted tests would not identify the remains during the pendency of this case. *Id.*

### b. Rule 35

Alternatively, Plaintiff argues that the requested discovery can properly be ordered under Rule 35. Rule 35 applies where a person's "mental or physical condition—including blood group—is in controversy," and permits the Court to order the party "to produce for examination a person who is in its custody or under its legal control" for "a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). Plaintiffs cite several cases for the proposition that an evidentiary postmortem examination and DNA test can be ordered under Rule 35(a). Docket no. 28 at 11 (citing *In re Certain Asbestos Cases*, 112 F.R.D. 427 (N.D. Tex. 1986) (finding that an evidentiary autopsy can be ordered pursuant to the terms of Rule 35(a)); *Plaisted v. Geisinger Med. Ctr.*, 210 F.R.D. 539, 541 (M.D. Pa. 2002); *Belkow v. Celotex Corp.*, 1989 WL 56976 (N.D. Ill. May 19, 1989) (concluding that upon a "proper showing Rule 35(a) permits the court to order an autopsy")). Defendants argue that Plaintiffs fail to meet additional requirements of Rule 35, namely that Plaintiffs must establish that a person's mental or physical condition is in controversy and that there is good cause for the examination, which requires "far more than mere relevance." Docket no. 34 at 22-23.

### B. Defendants' Arguments that Plaintiffs' Motion Exceeds Discovery Constraints

Defendants do not appear to dispute that Rule 34 specifically or discovery tools generally have sufficient breadth to accommodate the request at issue, but they object on other grounds, namely that a presumption against the disinterment of remains applies (and is not overcome by Plaintiffs) and that the request exceeds the external constraints imposed on discovery by Rule 26.

### a. Presumption Against Disinterment of Remains

Defendants argue that "there is a well-established presumption against removing the remains of a deceased person" that "is found throughout disinterment jurisprudence." Docket no. 34 at 8 (citing *Maffei v. Woodlawn Mem'l Park*, 29 Cal. Rptr. 3d 679, 684 (Cal. Ct. App. June 10, 2005)). To overcome this presumption, Defendants argue that Plaintiffs must show that justice requires production of the remains. Docket no. 34 at 9 (citing *Brewer v. Am. Medical Alert Corp.*, No. 1:08-0069, 2010 WL 280986, at *2 ("[T]he right to have a dead body remain unmolested is not an absolute one; it must yield where it conflicts with the public good or where the demands of justice require such subordination.")). Further, Defendants argue that Plaintiffs must show that examination will establish the facts sought. Docket no. 34 at 9 (citing *Stephens*, 685 Supp. at 847-48 ("Disinterment for the purpose of examination or autopsy will be ordered upon a showing of good cause and urgent necessity and upon a strong showing that the examination or autopsy will establish the facts sought."); 25A C.J.S. Dead Bodies § 29 (Disinterment for evidentiary purposes requires "a strong showing that the facts sought will be established by an exhumation or autopsy.")).

Defendants argue that Plaintiffs have not overcome this presumption. Docket no. 34 at 8. First, Defendants argue Plaintiffs have not shown justice requires disinterment and testing because the information that DNA testing would reveal is not relevant to Plaintiffs' claims, which turn on currently available information. *Id.* at 10. Nor can Plaintiffs show urgency, Defendants argue, because there is no showing that meaningful deterioration would occur while this case is pending. *Id.* Second, Defendants argue that Plaintiffs have not shown that examination will establish the facts sought because Plaintiffs have not established that the Plaintiffs' relatives will be among the requested remains, that the remains will likely provide

adequate DNA samples, that Plaintiffs' consultant has the necessary capacity and experience, and that the results will establish the relevant service members' identities. *Id.* at 12.

Plaintiffs argue that a presumption against disinterment arises only when remains are suitably buried, but that such a presumption does not apply here, where the graves in question are unmarked and temporary and where the government intends to disinter each grave eventually. Docket no. 35 at 3. If it does apply, Plaintiffs argue, then the Fifth Circuit requires only that the discovery is in the interest of justice. *Id.* Plaintiffs contend they meet this standard because DNA testing is the most effective tool available for providing additional evidence of the remains' identities, which is the primary factual dispute in this case. *Id.* at 4. Further, even if additional requirements apply, Plaintiffs argue they have shown that the discovery is necessary (because it is the only way to obtain the information sought, *id.* at 5), urgent (because each day risks more deterioration, *id.* at 6), and will establish the facts sought (because it will establish the remains' genetic profile, which will assist in their identification, *id.* at 7).

### b. Rule 26 Constraints

Here, the Court need not decide whether any or all of Rule 34, Rule 35, and common-law discovery principles allow the disinterment and testing requested here. Nor is it necessary for this Court to decide whether a presumption against disinterment is recognized in the Fifth Circuit or, if such a presumption does apply, what requirements need be alleged to overcome it. It is sufficient that, as discussed below, Plaintiffs' Motion to Compel exceeds the constraints on discovery imposed by Rule 26(b)(1).

Rule 26(b)(1) sets out the scope of permissible discovery, stating that

[p]arties may obtain discovery regarding discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the

parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1). If the Court determines that proposed discovery is outside this scope, the Court "must limit the frequency or extent of discovery otherwise allowed by these rules[.]" FED. R. CIV. P. 26(b)(2)(C)(iii). "Trial courts are afforded substantial discretion in determining whether to grant or deny a motion to compel discovery." *Escamilla v. United States*, No. 14-246, 2015 WL 12732889, at *2 (W.D. Tex. Apr. 13, 2015).

Here, Defendants argue that disinterment exceeds the scope of discovery set out in Rule 26(b)(1) because (1) it would reveal nothing relevant to Plaintiffs' claims and (2) it is not proportional to the needs of the case. First, Defendants argue that the request is irrelevant because Plaintiffs' challenge to agency action or inaction should be limited to the administrative record. Docket no. 34 at 14. To the extent the claims are not so limited, Defendants argue, the relevant dispute is not the remains' ultimate identity, but whether the facts before the Court are sufficient to require the agency to take specific action, rendering disinterment irrelevant. *Id.* at 15. Plaintiffs, in turn, argue that this is an attempt by Defendants to use the APA to limit discovery for all of Plaintiffs' claims, including those not rooted in the APA. Docket no. 35 at 9. Plaintiffs also argue that Defendants, as the party resisting discovery, bear the burden to show a given request is irrelevant. *Id.* (citing *Nerium Skincare, Inc. v. Olson*, No. 3:16-CV-1217-B, 2017 WL 277634, at *3 (N.D. Tex. Jan. 20, 2017)).

As the Court found above in its order on Defendants' Motion for Judgment on the Pleadings, several of Plaintiffs' claims survive, including some not based in the APA. Thus, even if Plaintiffs' APA claims are determined to be limited to the administrative record, it is clear that not all of Plaintiffs' claims will be limited in this way. Here, the disinterment and testing of the

remains at issue is relevant within the meaning of the Federal Rules to, at minimum, any of Plaintiffs' claims not entirely limited to the administrative record.

Second, Defendants argue that disinterment is not proportional to the needs of the case because it seeks ultimate relief under the guise of discovery, improperly intrudes on government and third-party interests, and imposes burdens not outweighed by the litigation benefits. As an initial matter, the Court notes that several of the proportionality factors set out in Rule 26(b)(1), to the extent they are relevant, support Plaintiffs' request: the constitutional issues at stake—related to the return of fallen service members to their families for proper burial—are highly important and the governmental Defendants have significant resources and sole access to the information sought.

However, the final factor, "whether the burden or expense of the proposed discovery outweighs its likely benefit," proves decisive in this case. The likely benefit of this discovery is obvious, as disinterment and testing would likely clarify the identities of the remains in question. The Court suspects that if the remains are disinterred and identified as belonging to the Plaintiffs' relatives, Defendants at that point would not begrudge Plaintiffs the dignity of proper burials. But if the remains are identified as belonging to fallen service members other than the Plaintiffs' relatives, the Court also suspects that Plaintiffs would no longer pursue this action or would pursue it in a different manner. This likely benefit, however, must be weighed against the burden. And while the Court is sensitive to the interests of the families and notes the oddity of the Defendants' refusal of Plaintiffs' offered assistance in identifying the remains of fallen service members, Plaintiffs' Motion to Compel fails on the grounds of proportionality because of the significant burden its granting would incur on Defendants.

Many of the burdens imposed by Plaintiffs' request are obvious and relate to the costs of disinterment and production, even if Plaintiffs conduct the testing themselves once the remains are produced. This burden includes the significant financial expenses that would result from conducting the disinterments, shipping the remains (with an escort to ensure dignified transfer), securing and equipping a facility in San Antonio for proper treatment of the remains, and monitoring Plaintiffs' access and testing. Docket no. 34 at 21.

In addition to these burdens on funds and resources, Defendants argue an order to disinter and test inappropriately intrudes on third-party interests and governmental duties.[2] As to third-party interests, Defendants argue that Plaintiffs' Motion to Compel seeks resolution of Plaintiffs' interests at the expense of other families, docket no. 34 at 18, and that Plaintiffs are not in a position to protect the interests of other families whose relatives are among the remains at issue, docket no. 34 at 20-21. Plaintiffs request for production seeks family DNA and genealogies in Defendants' possession, which Defendants allege was provided to Defendants under the assurance that it would be protected. Docket no. 34 at 20.  Another factor is that Plaintiffs do not commit to a specific mode of DNA testing, and thus intend to select which bones to sample and which tests to perform. Defendants argue this would grant Plaintiffs authority to "destroy a portion of the remains of service members to whom Plaintiffs are not related." *Id.* This intrudes on third-party interests, Defendants argue, as well as on Defendants' interests, as this would limit DPAA's options in its own testing. *Id.*

Relatedly, Defendants argue that Plaintiffs' request intrudes on the duties of DOD and DPAA. As detailed by Defendants, these duties include ensuring the respectful handling of the remains of service members, implementing and enforcing policies that ensure only those remains

---

[2] Defendants style this as an argument separate from its contention that the burdens outweigh the benefits, but the Court views this point as part of the burden Plaintiffs' request would impose.

likely to be identified are exhumed, and accounting for unidentified service members (using DNA testing as well as work from historians, anthropologists, and others). Docket no. 34 at 20-21. For their part, Plaintiffs argue that the government does not have a monopoly on identifying fallen service members using DNA testing. Docket no. 44 at 4.

Relevant to this part of Defendants' burden—disruption of Defendants' duties—is whether Defendants have expressed an intention to disinter all remains eventually, regardless of this suit's disposition. The parties disagree on this point. Plaintiffs argue that because DPAA has recommended disinterment of the remains from Cabanatuan Common Graves 822 and 704, the parties do not dispute that these remains—alleged to belong to relatives of three Plaintiffs—should be disinterred. Docket no. 28 at 7. Defendants dispute this characterization, arguing that their answer states only that

> DPAA has an ongoing project to identify unknown remains from Camp Cabanatuan interred in the Manila American Cemetery, and has been proposing the disinterment of Cabanatuan remains one common grave at a time . . ., provided that the standards set forth in Directive-type Memorandum-16-003 (DTM-16-003) are met; it is DPAA's intention to disinter all Cabanatuan remains in turn.

Docket no. 47 at 3 (citing [Docket no. 26]). Defendants argue that Plaintiffs seek disinterment of remains unrelated to Camp Cabanatuan, and that therefore Plaintiffs' contention that the government has admitted most of the relevant facts is incorrect. *Id.* at 1. Instead, Defendants concede that records associate four of the Plaintiffs' relatives with specific common graves, but they dispute Plaintiffs' claim that this association is enough to consider these remains identified or to demand disinterment. *Id.*

With respect to the other remains at issue, Plaintiffs point out that Defendants have already disinterred Kelder's remains, have recommended disinterment of Bruntmyer's and Morgan's, and would recommend disinterment of Hansen's if there were additional eligible

family reference samples. Docket no. 35 at 12. In deciding this discovery dispute, however, it makes little difference whether Defendants intend to disinter these remains eventually—this Court must credit Defendants' contention that Plaintiffs' Motion to Compel would alter their planned execution of statutorily delegated duties and thus adds to the burden that must be considered under Rule 26(b). The Court notes that whether Defendants' ultimately intend the eventual return of all fallen service members buried in the graves at issue or similar graves, and whether Plaintiffs' resources will hasten that return and provide relief to these service members' families, could well prove relevant as this case progresses.

The Court notes that Plaintiffs offer, in their advisory, to bear many of the necessary costs and burdens themselves. Docket no. 40. Plaintiffs stress that this offer is intended to show what they *can* do if no cooperation is offered by Defendants, not what they *must* do; ideally, in Plaintiffs' view, Defendants would extend their cooperation, but Defendants have not done so. Of course, should the Court allow Plaintiffs to undertake this operation themselves, alleviating much of the *financial* burden disinterment places on Defendants, the intrusion on Defendants' statutorily delegated responsibilities would become more acute (as would the risk of intrusion on third-party interests). Defendants make this argument in response to Plaintiffs' advisory, stating that this offer shows Plaintiffs improperly seek to entirely displace governmental functions and that Plaintiffs' request is thus akin to, among other examples, a request for the court to order the Secretary of Defense to outsource a military operation to a private company. Docket no. 43 at 2. Thus, whether Plaintiffs or Defendants bear the brunt of the expense and responsibility in disinterring and testing, Defendants are burdened regardless, either with respect to their delegated duties or their resources.

Another of Defendants' arguments as to proportionality is that disinterment and testing inappropriately constitute ultimate relief under the guise of discovery. This is because Plaintiffs' claims, Defendants argue, "boil down to whether any legal authority permits Plaintiffs to force Defendants to disinter unidentified remains on Plaintiffs' timetable and to prioritize identification of those specific remains over Defendants' other accounting efforts." Docket no. 34 at 17. Plaintiffs frame the ultimate relief sought as proper burials of their relatives, not the creation of a timetable that prioritizes their cases over others. Plaintiffs argue disinterment and DNA testing is only a prerequisite for the relief sought, docket no. 35 at 11, while Defendants argue it is the core relief sought, docket no. 34 at 17-18.

Discovery motions may not seek "all the disclosure to which [plaintiffs] would be entitled in the event they prevail on the merits," *Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 388 (2004), as only dispositive motions may seek ultimate relief, *see Nored v. Cuoco*, No. 17-134, 2017 WL 2537292, at *2 (S.D. Ohio June 12, 2017). Here, although the point is well taken that the purpose of Plaintiffs' suit is to secure proper burials, the ultimate relief sought from the Defendants is production of the remains. The Court notes, as do the Plaintiffs, docket no. 44 at 6, that after testing the remains could be returned to the Defendants' custody during the pendency of the suit. On this point, Plaintiffs contend that discovery would erase all doubts as to the identity of the remains at issue—if the remains are identified as Plaintiffs' relatives, Defendants would concede and allow a proper burial, and if they are not so identified Defendants could maintain custody and the case could move to trial. Docket no. 44 at 6. Nevertheless, Plaintiffs' request likely does seek ultimate relief (or at least relief beyond the normal bounds of discovery), and this fact weighs against granting Plaintiffs' Motion to Compel. If at this stage Defendants are unwilling to accept Plaintiffs' offer of assistance, this Court is not

able to use discovery tools to override Defendants' decision-making authority with respect to which graves to disinter and on what timeline. That relief will come, if at all, later in these proceedings, through a dispositive motion or at trial.

## CONCLUSION

Accordingly, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion for Judgment on the Pleadings and DENIES Plaintiffs' Motion to Compel.

SIGNED this 23rd day of October, 2018.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE